ELCO SHOE MANUFACTURERS, INC., Appellant, v. WILLIAM E. SISK et al., as Executors of JOHN P. MURPHY, Deceased, et al., Respondents.

(Argued October 12, 1932; decided November 22, 1932.)

*Israel H. Perskin* and *Wallace T. Stock* for appellant. Defendant Murphy breached his contract in selling the Chandler shoe, which competed with plaintiff's, within the true meaning of the contract. (*Dwight* v. *Germania Life Ins. Co.*, 103 N. Y. 341; *Crown Corset Co.* v. *Bauman & Co.*, 213 App. Div. 113; 241 N. Y. 606; *Cohen* v. *Berlin & Jones Envelope Co.*, 166 N. Y. 292; *Carthage Tissue Paper Mills* v. *Village of Carthage*, 200 N. Y. 1; *Continental Securities Co.* v. *Interborough R. T. Co.*, 207 Fed Rep. 467; *Randall* v. *Peerless Motor Car Co.*, 212 Mass. 352; *Poel* v. *Brunswick-Balke-Collender Co.*, 216 N. Y. 310; *Matter of Thompson*, 217 N. Y. 111; *Matter of Glatzl* v. *Stumpp*, 220 N. Y. 71; *Hartley* v. *Eagle Ins. Co.*, 222 N. Y. 178; *Alcock* v. *Davitt*, 179 N. Y. 9.)

*Grant C. Fox* for respondents. The Chandler shoes did not compete with the Elco line of shoes and, therefore,

defendant Murphy had a perfect legal right to sell them. (*Randall* v. *Peerless Motor Car Co.*, 212 Mass. 352.)

POUND, Ch. J.   John P. Murphy had for some years, beginning July 1, 1921, been a salesman employed by plaintiff, a manufacturer of ladies' shoes.   He was discharged on January 18, 1929.   Prior to July 1, 1926, his periodical contracts with the plaintiff had provided that he should be at liberty to sell other commodities and shoes which did not compete with lines manufactured by plaintiff.   On May 1, 1926, he entered into a renewal agreement under which he was working at the time of his ·discharge, by which he agreed for a period of three years from July 1, 1926, to act as salesman and devote his time, attention and efforts to the business of plaintiff, as theretofore.   Plaintiff agreed on its part that Murphy should be at liberty to sell other commodities and shoes which did not compete with the lines manufactured by plaintiff.   Murphy first took out another line of shoes, known as the Chandler shoe, in June or July, 1928.   He thereafter sold Chandler shoes and built up their sales $104,000 in a single year, during which time plaintiff's sales by him fell off $150,000.

On January 18, 1929, Murphy was discharged and on the same day this action was brought against him and the other defendant alleging a conspiracy and asking for an accounting and damages.   Murphy's answer was a general denial and counterclaims covering unpaid commissions and damages for wrongful discharge.   The trial resulted in a judgment for Murphy for $32,212.70 on such counterclaims.

Finding of Fact No. XXXIII is as follows: " The shoes of the defendant G. W. Chandler Co., Inc. sold by defendant Murphy did not compete with the lines manufactured by the plaintiff."   Appellant alleges that this finding was really one of law, and that it was unsupported by the evidence.

There was also a finding that Murphy was wrongfully

discharged. This likewise is claimed by appellant to be a conclusion of law.

If the Chandler shoes which Murphy sold were shoes competing with plaintiff's line within the fair intent and meaning of the contract, then Murphy's conduct in selling such shoes was a violation of his contract with plaintiff as matter of law. " What a contract means is a question of law." (*Dwight* v. *Germania Life Ins. Co.*, 103 N. Y. 341, 352.) We are unable to see any ground on which these findings of the trial court can be supported. The finding that the two lines of shoes did not compete is a conclusion drawn from findings of inferior material, inferior design and style, inferior workmanship and lower prices of the Chandler shoes; a finding that they were not sold as a substitute to take the place of plaintiff's shoes; that retail dealers handled the two makes as being on a distinctly different price range and sold the Chandler shoes to customers who would not pay the higher price at which plaintiff's shoes had to be retailed. The trial court defined competing shoes as " those so similar in price, design, style, material, workmanship and other characteristics as may fairly leave ordinary and reasonable retail dealers in such doubt in making a choice between them as to permit the skill of a salesman to become a determining factor," and held in substance that there was no similarity in any of these respects, so that a choice would depend on the skill of the salesman. This definition is taken from *Randall* v. *Peerless Motor Car Co.* (212 Mass. 352). We do not adopt it for the purposes of this case. We have here an illustration of the fact that no man can serve two masters with equal fidelity when rival interests come into existence. Agents are bound at all times to exercise the utmost good faith toward their principals. They must act in accordance with the highest and truest principles of morality. The question here is not so much a technical definition of the word " competition " as used by shoe dealers as it is a question

of loyalty and fair dealing. (*Meinhard* v. *Salmon*, 249 N. Y. 458, 464.) An agent is not loyal when he offers for sale a choice between a ladies' high-class fine turned shoe and a cheaper shoe resembling the former and offered to the trade as such. The cheap article competes with the higher priced if the two superficially resemble one another in appearance. It seems incredible that a ladies' lower priced turned shoe as matter of law does not compete with a higher priced shoe of the same type when the same salesman offers both. Whether Murphy pushed the Chandler shoe or not, he offered a fine, high priced shoe and one not quite so expensive but practically the same in appearance, except to the trained observer. This seems to be a real and active competition. Is there no competition between a standard article and " something equally as good " which is sold at a lower price, when each sale of the latter is at the expense of the former? Persuasive salesmanship is not the only element of competition in determining a choice between two different articles. The articles may speak for themselves. The question here is whether the agent was fair to plaintiff when he sold the Chandler shoes. All makes and grades of ladies' shoes are in potential competition with each other. We do not hold that permission to sell non-competing shoes had no meaning. Murphy was clearly authorized to sell other lines of shoes distinct and separate in character but not ladies' turned shoes of good quality. It was not loyal on his part to sell shoes that were almost if not quite copies of the Elco shoes at prices which might induce a buyer to put the cheaper shoe in stock as being a better bargain. He not only did this but in one instance at least he told the Chandler people how to disguise an Elco design so as to produce an imitation thereof and sold the product.

The entire record unmistakably suggests technical and arbitrary distinctions on the part of Murphy to evade his duty to his employer, to be disloyal to it and to promote

the sale of the Chandler shoe where otherwise the Elco shoe might have been purchased, rather than that high degree of fidelity to plaintiff which was its due. Even if the two lines were technically non-competitive, Murphy was not loyal to plaintiff when he carried the Chandler shoes as a main line. He had agreed to " devote his time, attention and efforts " as an Elco salesman " as heretofore," when he carried no side line. While he might sell " other commodities and shoes which do not compete," his primary duty was to the Elco Company. The other shoes were to be a side line. He was disloyal to the Elco Company when he devoted his time, attention and efforts, not to plaintiff as theretofore, but also to a large extent to the Chandler Company. As matter of law it cannot be said that plaintiff was required to continue in its employ the services of such an employee. A mere permission to sell non-competing goods did not authorize him to relax his efforts to sell the Elco shoes. It follows that plaintiff was warranted in discharging Murphy.

The judgment of the Appellate Division and that of the Special Term should be reversed. The counterclaims should be dismissed and judgment granted in favor of plaintiff for an accounting in accordance with this opinion (which accounting will include all items for commissions earned and unpaid as set forth in the counterclaims), with costs in all courts to appellant.

CRANE, LEHMAN, KELLOGG, O'BRIEN, HUBBS and CROUCH, JJ., concur.

Judgment accordingly.