Charles A. Loreto, J.
For brevity, in lieu of stating the lengthy names of the parties, they will be referred to as “ Rosenthal ”, the German manufacturer, and “ R. B. C. C.”, 11 Block ”, and “ Loewy ”, the American firms. The latter have moved to stay the arbitration of certain demands made pursuant to two written notices, dated January 22, 1960, served by the former under an agreement between the parties.
Rosenthal is one of the world’s foremost manufacturers of the finest glass and chinaware. The parties entered into a joint venture agreement on June 4, 1951, which provided for the formation of a corporation, the sharing of stock therein between them, as well as of control of the corporation. It provided that Rosenthal would execute a contract giving to that corporation the right to be the sole sales representative in the United States of its products manufactured in its various factories, with the exception of one line. It also provided that Loewy would provide the general services of designing and that Block would provide supervisory services. This agreement was followed by another, dated February 7, 1952, wherein it is provided that the exclusive license for the sale of the Rosenthal products in the United States be given to the American parties. It is an agreement for a 10-year term with a 15-year renewal. It contains a number of stipulations with which we are not presently concerned. The parties having performed pursuant to its terms during the past eight years, Rosenthal has by its written notice dated January 22, 1960, demanded arbitration on the following matters:
“ 1) That said agreement of February 7th 1952 between the parties as aforesaid is void for ‘ lack of mutuality ’.
“ 2) That the contract be terminated by reason of the breach of the fiduciary duty of the licensee (parties of the second part) to the licensor (party of the first part) by Joseph Block individually and as Joint Venturer and as President of RosenthalBlock China Corporation in that while exclusive agents for Rosenthal-Porzellan A. G. the said Joseph Block as Joint Venturer and as President of Rosenthal-Block China Corporation a sub-licensee did act contrary to the best interest of Rosenthal-Porzellan A. G. and did negotiate with Noritake, a competitor of Rosenthal-Porzellan A. G. in the United States.
“ 3) That Sec. 15 of the said agreement does not cancel agreement of intention dated June 4th 1951 between the parties.”
A second notice of arbitration on the same date was served on behalf of Thomas et al., subsidiaries of Rosenthal, with respect to the following matters:
*134 ‘ ‘ that the said agreement of April 1st 1952 be cancelled and terminated by reason of the breach thereof in that you have failed to protect conscientiously the interest and prestige of the undersigned by negotiating for representation of the Japanese firm nobitake with respect to china products.
“ that the said agreement of April 1st 1952 between the parties does not include ‘ Johann Haviland ’ china products.”
The arbitration clause of the agreement of February 7, 1952 states in part the following: “11. Any controversy or claim arising out or relating to this agreement, or the breach thereof, shall be settled by arbitration in accordance with the Rules of the American Arbitration Association ”.
Regarding the first demand for arbitration by Rosenthal to the effect that the agreement lacks mutuality, this contention is premised upon the charge that the agreement fails to include an obligation upon the American firms to purchase any of its products during the initial term of 10 years and after its renewal during the first 3 years of the renewal term. Rosenthal, therefore, asserts that the agreement lacks mutuality and is void. There is no doubt that an agreement totally lacking in mutual obligations is nudum pactum and unenforcible. If it is simply an agreement of purchase and sale obligating the seller to sell and leaving it entirely within the will of the buyer to make any purchases, it lacks the primary essential of mutuality of consideration to render it enforeible (Schlegal Mfg. Co. v. Cooper’s Glue Factory, 231 N. Y. 459).
In opposition to this contention it is pointed out that the agreement enumerates many promises other than promises to purchase on the part of the American parties, which have been discharged and are being discharged. In addition, it is asserted that they have placed substantial orders and have made substantial purchases of the G-erman manufacturer’s products during the past eight years. Moreover, they assert that the agreement, read in its entirety and in the light of past performances, is “instinct with an obligation” to purchase the Rosenthal products, citing Wood v. Duff-Gordon (222 N. Y. 88).
Of course where there is no possible basis for a real dispute between the parties, the claim sought to be submitted for arbitration must be treated as groundless or frivolous and arbitration should be disallowed (Matter of General Elec. Go. [Elec., etc., Workers], 300 N. Y. 262; Matter of Rapid-Amer. Corp. [Quinn], 7 N Y 2d 891, affg. 8 A D 2d 802; to the same effect, American Stores Co. v. Johnston, 171 F. Supp. 275; Davenport v. Procter & Gamble Mfg. Co., 241 F. 2d 511).
*135 Although it is clear that up to the present time the American parties have made purchases of the Rosenthal products and have thereby supplied and discharged the omitted express obligation to do so, Rosenthal, as a German manufacturer, may have an apprehension as to the future. Whether such apprehension is or would be justifiable, the court need not now determine. The fact is that for the balance of the initial term of 10 years of the agreement or during the first 3 years of its renewal, if renewed, Rosenthal may be held at the mercy of the American parties, who may not place a single order for its products, as there is no such binding obligation upon them. If this were to come to pass, Rosenthal would conceivably suffer great damage without the right to recover therefor (Topken, Loring & Schwarts, Inc. v. Schwarts, 249 N. Y. 206, 211). Of course, this may be a risk that Rosenthal is exposed to if it be determined that the agreement does not lack mutuality and Rosenthal’s complaint might therefore be considered as nothing more than the complaint of a party who, in hindsight, discovers that he might have entered into an agreement with more favorable terms than he has. The court is disinclined to overrule and stay this claim for arbitration upon a finding that it is groundless or frivolous.
However, there is a fundamental bar to its submission to arbitration. The demand requests that the arbitrators find that the agreement “is void for lack of mutuality”. It has been held that upon a proper submission the arbitrators have the right to pass on all questions of fact and of law. This demand may present to them only a question of law or one mixed of fact and of law. It appears to be one within the competence of the arbitrators. Its determination in favor of Rosenthal would permit termination of the agreement at its option. It would constitute a finding of nudum pactum, not necessarily effective ah initio, but surely thenceforth. The arbitrators in effect would thus be determining the nonexistence of a valid and enforcible agreement between the parties. However, this is not permissible, for the arbitration clause and the right to proceed under it are necessarily grounded upon the existence of a valid agreement. If the agreement is nonexistent, the arbitration clause therein contained, not standing apart as an independent agreement, is perforce ineffective (Matter of Kramer S Uchitelle, Inc., 288 N. Y. 467, 471). In the last-cited case, it was stated, ‘ ‘ Arbitration clauses in contracts such as those under consideration are directed solely at remedy — not to the validity or existence of the contract itself. Thus proceedings to enforce *136 arbitration * # * presuppose the existence of a valid and enforcible contract at the time the remedy is sought ’ \
In other words, the issue as to the existence of a valid and enforcible agreement must be resolved by the court before any dispute may be submitted to the arbitrators under any of its terms (Kulukundis Shipping Co. v. Amtorg Trading Corp., 126 F. 2d 978, 986). Distinguishable are all the cases where the attack is not as to the existence of an agreement but is upon the conduct or transactions which amount to a breach of the agreement in nonperformance due to fraud, permitting its termination (Robert Lawrence Co. v. Devonshire Fabrics, 271 F. 2d 402), or rescission of sale (not rescission of the agreement) due to breach of agreement (Matter of Transpacific Transp. Corp. [Sirena Co.], 16 Misc 2d 217, affd. 9 A D 2d 316).
The motion to stay this first demand for arbitration should be granted.
Now, we turn to Rosenthal’s second demand for arbitration, which in effect seeks to have the arbitrators declare the agreement terminated because of the breach of fiduciary duty by the respondents herein. The petitioner claims that in November, 1959, Joseph Block, as a principal of the American parties, went to Japan for the express purpose of negotiating with the Japanese firm of Noritake, a competitor of Rosenthal, in order to acquire control of the Noritake Company of America. It is contended that this deal did not go through because of the refusal of the Japanese firm and that these talks were without the knowledge or consent of Rosenthal. The respondents contend that all that took place was an exploratory talk which did not reach the stage of agreement with Noritake. They urge that this is not an arbitrable matter because the demand can be considered only under paragraph 5 of the agreement, which denies the arbitrators the power to cancel the agreement for engaging in another competitive enterprise. Also they urge it is not arbitrable because it is groundless.
■ Paragraph 5 of the agreement of February 7, 1952 provides: “ Block agrees not to harm the business of the parties of the second part [Rosenthal, Block, and Loewy] by engaging in another enterprise directly competitive with the said business. At any time, Rosenthal PZF. A. GL, as a licensee has the right to notify Block to the effect that this clause is, in Rosenthal’s opinion, being violated. In that event and unless an agreement is reached by Block and Rosenthal within 30 days after such notification in writing, then the question is to be submitted to arbitration as generally provided herein. It is, however, distinctly understood and agreed that any notice given under *137 this clause or any arbitration taken relative to this particular clause or any decision rendered by the arbitrators in favor of either Block or Rosenthal, shall not be deemed sufficient to vitiate this contract or cause a cancellation of the same. The parties agreed that the decision to be rendered by the arbitrators shall take the form of approval or disapproval of the handling of the lines in question and in no manner, way or form shall there be any request or assessment of damages.”
It should be noted that Rosenthal claims that this provision, set forth on a separate page of the agreement, was not signed by it as a party and that it represents merely an agreement between the licensees inter sese. Granting that Rosenthal owns 35% of the stock of R. O. C. B. and therefore has a participating interest in it with the other licensees, Rosenthal urges that its paramount interest and stake in the agreement is as the German manufacturer and seller of its products, that its extensive manufacturing plants in Germany could be seriously crippled and that it would suffer great damage by reason of any breach of fiduciary duty such as it charges that the American parties have attempted.
There is no doubt, in the court’s opinion, that Rosenthal’s relationship with the American parties is in a dual capacity, both as a manufacturer and as a participating licensee. The benefits and harm that might accrue and befall it as manufacturer can be different from and far greater than those it might enjoy or suffer as a sharing licensee. These would not be identical. Therefore, its separate status as manufacturer in the context of the agreement must be considered apart from its status as a participant-licensee. (See Champion Spark Plug Co. v. Automobile Sundries Co., 273 F. 74, 80 [C. C. A. 2d]; Elco Shoe Mfrs. v. Sisk, 260 N. Y. 100, 103.)
Paragraph 5 of the agreement is limited to prohibiting licensees from engaging in any competitive business detrimental to them as such. It fails to mention the possibility of competition with Rosenthal as manufacturer. It is clear that Rosenthal’s complaint is not as a sharing licensee with a right to complaint under paragraph 5, but is as a manufacturer with plants and employees in Germany. The court agrees that paragraph 5 is directed to competition that would be harmful to the American venture — the joint licensing enterprise. This second demand by Rosenthal for arbitration is properly within the scope of the general arbitration clause as it relates to conduct referable to competition that would be harmful to it as a German manufacturer.
*138 Whether its complaint is groundless is not for the court now to resolve upon the facts disclosed. This dispute should be resolved by the arbitrators. Also, the relief and its nature, if any, that should be granted, is a matter for them to decide.
Rosenthal’s third demand for arbitration can be disposed of readily. It asks that the arbitrators determine that section 15 of the agreement of February 7, 1952 does not cancel the agreement of intention dated June 4, 1951 between the parties. In view of the fact that this demand is vague and indefinite and fails to indicate any definable dispute, the court should not permit its submission for arbitration.
There remain for consideration the two items in the written notice of demands for arbitration, served on behalf of Thomas et al. These also can be disposed of readily. The first item represents its complaint of breach of fiduciary duty on the part of the American parties. Since it is substantially the same as that in demand No. 2 served on behalf of Rosenthal, it will be treated in the same manner. The second item that Thomas et al. seek to submit to arbitration is that ‘ ‘ The agreement of April 1, 1952 between the parties does not include the Johann Haviland china products.” The agreement of April 1, 1952, does not expressly contain an arbitration clause. However, paragraph 13 thereof must be deemed to incorporate by reference the arbitration clause contained in the agreement of February 7, 1952 between the parties, for it reads: “It is
intended that this representation contract is to compliment the terms of a certain agreement executed by and between Rosenthal Porzellan A. Gr. and Raymond Loewy Associates, Steelmasters, Incorporated and/or J. & I. Block and Rosenthal Porzellan A. Gr. dated the 7th day of February, 1952. In the event that any of the terms or conditions of the within agreement vary from the terms and conditions of the said agreement referred to hereinabove, then the terms of the latter shall prevail. In any event, the terms of the said latter agreement shall take precedence over the terms of the within agreement insofar as it affects the same subject matter.” Whether the Johann Haviland china products are included or not under the terms of the agreement of April 1, 1952, is a matter of interpretation of its terms and it cannot be said that it is not an arbitrable matter.
The motions for a stay of arbitration are granted to the extent herein indicated, and otherwise denied. Settle order.
*139 (Reargument.)
Charles A. Loreto, J.
The motion for reargument is denied. It is difficult to believe that the petitioners and their attorneys cannot understand what is plainly written and has been clearly decided as to the point in the decision which they now say needs “clarification”. The court could not have with more clarity stated and held that the claim of dispute of Rosenthal as manufacturer is a proper subject of arbitration under the general arbitration clause of the agreement between the parties and not under paragraph “ 5 ” thereof.
Since petitioners have argued that the claim or dispute sought to be arbitrated by Rosenthal, whether as licensee or as manufacturer, because no agreement was negotiated by Block with Noritake of Japan, is frivolous and therefore not arbitrable, it may not be inappropriate at this time to note as additional response to this contention the recent decision by the Supreme Court of the United States decided June 20, 1960, in United Steelworkers of America v. American Mfg. Co. (363 U. S. 564) wherein the court by Mr. Justice Douglas wrote:
‘ ‘ In the context of the plant or industry the grievance may assume proportions of which judges are ignorant. * * * The question is not whether in the mind of a court there is equity in the claim. Arbitration is a stabilizing influence only as it serves as a vehicle for handling any and all disputes that arise under the agreement. * * * The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator. In these circumstances the moving party should not be deprived of the arbitrator’s judgment, when it was his judgment and all that it connotes that was bargained for.
‘1 The courts, therefore, have no business weighing the merits . of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim. The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious. The processing of even frivolous claims may have therapeutic values of which those who are not a part of the plant environment may be quite unaware (Italics supplied.)