■ PORTMAN AMERICAN CORP., Respondent, et al., Plaintiff, v JOEL RATNER et al., Appellants, et al., Defendant.—Judgment, Supreme Court, New York County, entered August 11, 1975, in this action to recover the sum of $700,000 consisting of alleged real estate brokerage commissions and a finder's fee for $45,293 in favor of the plaintiff-respondent, after a jury verdict in its favor, insofar as appealed from, reversed, on the law, and the complaint of plaintiff-respondent Portman dismissed as against defendants-appellants, with $60 costs and disbursements of this appeal to appellants. Whatever services the plaintiff may have performed for the defendants were unsuccessful and it is not entitled to recover either as a finder or a broker. The transaction giving rise to this suit was a loan from Marine Midland

Bank and Apco Oil Corporation to the defendants. Not only did the plaintiff not act as a broker by bringing these parties together in the lending agreement, but neither did it act as a finder by finding the lenders and bringing them together with the defendants for them to work out their own agreement (see *Knauss v Cottfried Kareger Brewing Co.,* 142 NY 70). At best, the plaintiff wished the defendants to retain one Haskins as their attorney and arranged an introduction to Haskins and his wife. The latter was employed by Loeb-Rhoades Company to whom she brought the defendants' financing problems. Loeb-Rhoades put together the agreement with Marine Midland and Apco Oil and received a brokerage fee of $100,000. The plaintiff has made no claim on this fee nor does it claim that either Loeb-Rhoades or Haskins was its agent. A finder, no less than a broker, runs the risk that failing himself, "others might be left to some extent to avail themselves of the fruit of his labors" *(Sibbald v Bethlehem Iron Co.,* 83 NY 378, 383). Were we not dismissing the complaint, we would, in any event, reverse and order a new trial on the ground that the verdict was against the weight of the evidence. Concur—Lupiano, Silverman, Lane and Lynch, JJ.; Murphy, P. J., dissents in the following memorandum: A jury verdict in favor of the plaintiff may be set aside by this court if it is concluded that by no rational basis could the jury have found in favor of the plaintiff on the evidence presented *(Stein v Palisi,* 308 NY 293, 296). With this principle in view, the record will be examined to ascertain whether there is any evidence to support the verdict of $36,500 in favor of plaintiff Portman against defendants Ratner and Leeco on the theory of *quantum meruit.* In 1970, defendant Leeco and its vice-president, defendant Ratner, were interested in financing a real estate development in Florida. Ratner approached Gordon Jacobson, plaintiff's president, to assist him in finding offshore equity funding. Jacobson testified that he was promised a finder's fee of 10% of any financing that he obtained for the defendants. During May of 1970, Jacobson arranged appointments with two investment bankers but the defendants were unable to secure equity financing. During the summer, Jacobson invited Ratner for a weekend in his summer home. Before that weekend, Ratner was intentionally informed that John and Priscilla Haskins would be among the guests present. Jacobson suggested that John's law firm be retained since it was well known in this area of financing. Ratner was also apprised of the fact that Priscilla was an associate in Loeb-Rhoades, an investing banking firm previously recommended by Jacobson. Suffice it to say that Ratner and the two Haskins discovered that they had many common interests in financing on that Labor Day weekend. Within a few days, Priscilla had set up a meeting with her superiors in Loeb-Rhoades. In the ensuing months, other meetings were held and a principal in Loeb-Rhoades eventually inspected the defendants' Florida property. During the fall of 1970, John's law firm was also retained by the defendants. In June of 1971, defendants received a mortgage loan of $5,300,000 from Marine Midland Bank of Buffalo and a joint venture investment of $500,000 from Apco Gas and Oil Co. If a financing transaction ultimately entered upon is a direct result of the disclosure of the opportunity by the finder, the latter is entitled to his compensation *(Simon v Electrospace Corp.,* 32 AD2d 62, 66, mod on other grounds 28 NY2d 136). The weekend meeting between Ratner and the two Haskins was not a fortuitous event. Jacobson had deliberately arranged that meeting with the hope that one of the Haskins would secure financing for Ratner. While defendants maintained that they had prior dealings with Loeb-Rhoades, they were unable to obtain any financing in this matter until Priscilla had interceded with her superiors in that invest-

ment banking firm. Hence, the jury could have reasonably found that there was a causal nexus between the weekend meeting arranged by Jacobson and the eventual financing. Although defendants' project was financed through a mortgage loan and a joint venture investment rather than through equity funding, this fact is immaterial *(Simon v Electrospace Corp., supra,* p 65). The controlling consideration is not the form of the financing but that financing was actually obtained by the defendants. It must be further stressed that Jacobson testified that, in September of 1970 and January of 1971, Ratner admitted that they had an agreement. Jacobson also testified that finders normally received approximately a ½% fee in mortgage loan financing. The verdict of $36,500 was within the range of that ½% fee. Consequently, there was more than ample evidence to support the verdict as to both liability and damages. However, I would recommend that the judgment be reversed on a different ground. At the end of plaintiff's case, the lower court granted its motion to conform the pleadings to the proof so as to permit recovery on the theory of *quantum meruit.* Almost immediately the court then granted defendants' motion to dismiss the cause of action based on *quantum meruit* but without prejudice to plaintiff's right to seek a subsequent motion of reconsideration. At the end of defendants' case, upon plaintiff's motion for reconsideration, the court denied the prior motion to dismiss the cause of action based upon *quantum meruit.* Even though the complaint was based upon the special contract to recover a 10% finder's fee, the trial court should have permitted an amendment at the close of plaintiff's testimony so as to permit it to recover on the theory of *quantum meruit. (Grattan v Societa Per Azzioni Cotonifico Cantoni,* 2 Misc 2d 861, 869.) The court erred in refusing to permit the amendment at the end of plaintiff's case. While that error was later corrected at the end of the trial, that correction resulted in serious prejudice to the defendants. Simply stated, they never had the opportunity to put in a defense to that particular cause of action based upon *quantum meruit.* The judgment should be reversed and a new trial ordered.