OPINION OF THE COURT
Edwin Kassoff, J.
This is a proceeding pursuant to article 81 of the Mental Hygiene Law for the appointment of a special guardian to sell the shares of the cooperative apartment of the alleged incapacitated person (AIP), Josephine Mascalone, so that she may become Medicaid eligible.
The AIP is a 95-year-old woman currently residing at the Bellhaven Nursing Center (Bellhaven) in Brookhaven, New York. She originally lived with her longtime companion, Harry Tyson, in Queens. She was admitted to Good Samaritan Hospital on April 30, 1990, and was discharged to Park Nursing Home on July 11, 1990. She was transferred to Bellhaven on March 19, 1992. Bellhaven receives the AIP’s Social Security payments and pension funds directly, and receives the balance of its fee from Medicaid. On November 11, 1988, the AIP executed a power of attorney in favor of her grandniece, Andrea O’Neill. The AIP’s current assets include shares of a cooperative apartment in Jackson Heights, New York.
The evidence in the record reveals that the AIP suffers from Alzheimer’s disease and dementia and is confused as to person, place, and time. She is nonambulatory and when out of bed, she is in a reclining geriatric chair. She is unable to care for herself, and all of the AIP’s activities of daily living must be carried out for her by a certified nursing assistant. The AIP is unable to make any decisions regarding her care or property management.
Petitioner commenced this proceeding to have a special guardian appointed for the AIP with the authority to sell the AIP’s shares in the cooperative apartment so that the AIP could become Medicaid eligible. Petitioner contends that Ms. O’Neill, the attorney-in-fact, is unable or unwilling to sell the co-op and, therefore, requests that this court revoke the power of attorney. Petitioner is not seeking the appointment of a personal needs guardian since the AIP’s nephew, John Ingras *703 sia, and. Ms. O’Neill are able and willing to make medical decisions for the AIP.
A hearing was conducted before this court on August 15, 1996. At the hearing, Steven Minerva, the court evaluator for the AIP, stated that he spoke with Ms. O’Neill and she does not want to be involved in the sale of the co-op. She lives in Suffolk County and feels that the transaction would be too much trouble for her. Mr. Minerva further stated that the AIP needs a guardian for this transaction since she was nonresponsive and appeared out of contact when he visited her.
Article 81 of the Mental Hygiene Law allows a guardian to be appointed for one’s personal needs, property management, or both (Mental Hygiene Law § 81.02 [a]). Article 81 attempts to create a guardianship system that is tailored to meet the specific needs of the individual (Mental Hygiene Law § 81.01). Thus, a guardian appointed under article 81 is given only those powers which he or she needs and no more. In this way, article 81 seeks to foster the least restrictive form of intervention consistent with an individual’s self-determination (see, Mental Hygiene Law § 81.02 [a] [2]). In keeping with this goal of a guardianship tailored to meet an individual’s specific needs, Mental Hygiene Law § 81.16 (b) enables the court to appoint a special guardian who is authorized to engage in a specific transaction or series of transactions on behalf of the AIP, if the court determines that the transaction is necessary for the AIP’s personal needs and property management.
At the outset, the court finds that if the AIP’s co-op is not sold, she will not become Medicaid eligible and will be unable to remain at Bellhaven. Thus, this transaction is necessary to provide for the AIP’s property management. Though the AIP executed a power of attorney in favor of Ms. O’Neill, the evidence adduced at the hearing reveals that Ms. O’Neill is unwilling to sell the co-op. Thus, it is necessary for this court to revoke Ms. O’Neill’s power of attorney and appoint a special guardian solely to sell the co-op as it is the least restrictive type of intervention based on her needs.
A guardian appointed under article 81 clearly is not empowered to revoke a power of attorney (Mental Hygiene Law § 81.22 [b]). However, Mental Hygiene Law § 81.29 (d) provides that if the court determines that a person is incapacitated and appoints a guardian, the court may modify, amend, or revoke a previously executed power of attorney if the court finds that such power was made while the person was incapacitated. The court must conduct a hearing and make a finding *704 that the AIP was incapacitated at the time of the execution of the power of attorney. This court, though, need not determine whether the AIP herein was incapacitated at the time she executed the power of attorney since the court finds that Ms. O’Neill, as attorney-in-fact, breached the fiduciary duty she owed to the AIP.
A written power of attorney is a formal contract and creates a principal-agency relationship (Northwestern Natl. Ins. Co. v Alberts, 769 F Supp 498, 508 [SD NY]; Maritime Ventures Intl, v Caribbean Trading & Fid., 689 F Supp 1340, 1353 [SD NY]; Etterle v Excelsior Ins. Co. 74 AD2d 436, 441). Agency is a legal relationship between the principal and agent which results from the manifestation of consent of one person to allow another to act on her or his behalf and subject to her or his control, and consent by the other party so to act (Maurillo v Park Slope U-Haul, 194 AD2d 142, 146). There is a fiduciary relationship between the agent and the principal, and the agent is bound at all times to exercise the utmost good faith toward the principal (Elco Shoe Mfrs. v Sisk, 260 NY 100, 103; Soam Corp. v Trane Co., 202 AD2d 162, 163; Northeast Gen. Corp. v Wellington Adv., 151 Misc 2d 389, 392, affd 187 AD2d 302). An agent must act in accordance with the highest and truest principles of morality (Elco Shoe Mfrs. v Sisk, supra, 260 NY, at 103).
In the matter at hand, the court finds that Ms. O’Neill has not exercised the utmost good faith toward the AIP, her principal. It is undisputed that she has been unwilling to sell the AIP’s co-op. Individuals from the Medicaid Chronic Care Unit contacted Ms. O’Neill regarding the sale of the co-op, yet she made no arrangements to sell the apartment. Indeed, Mr. Minerva, the court evaluator, testified at the hearing that he spoke with Ms. O’Neill, and she feels it is too much trouble for her to be involved in the sale of the co-op since she resides in Suffolk County and the co-op is located in Queens. In addition, Ms. O’Neill was served with the order to show cause and did not appear at the hearing to offer any explanation as to why she has not sold the AIP’s co-op. Under these circumstances, the court finds that Ms. O’Neill breached the fiduciary duty she owed towards the AIP, resulting in potential harm to the AIP. Therefore, the court will revoke the power of attorney the AIP executed in Ms. O’Neill’s favor.
The court finds that there is clear and convincing evidence that the AIP is likely to suffer harm because she cannot provide for her property management and is unable to adequately *705 understand and appreciate the nature and consequences of this inability (Mental Hygiene Law § 81.02 [b]). The court further finds that the AIP’s functional limitations are such that she is unable to make any type of decisions regarding her property management. Thus, she is unable to engage in a transaction to sell her co-op and, as discussed above, if it is not sold, she will not be eligible for Medicaid and will be unable to continue to reside at Bellhaven.
In view of the foregoing, the court will revoke the power of attorney executed in favor of the AIP’s grandniece, Andrea O’Neill, and will appoint petitioner as special guardian solely for the purpose of selling the shares of the AIP’s co-op so that petitioner can become Medicaid eligible. The court further finds that it is not necessary to appoint a guardian for any other purpose as the AIP resides in a facility that cares for all her needs and she has no other property.