OPINION OF THE COURT
Gerald V. Esposito, J.
Margaret Ann Bomba, Esq., the court evaluator appointed by this court by order dated September 12, 1996, in the above-entitled proceeding, has moved by order to show cause, for an order to: disqualify Jonathan Bachrach, Esq., attorney for the petitioner, Hanna Lichtenstein, on the grounds that he (Bachrach), by reason of his former representation of the alleged incapacitated person (AIP) (Edda Wogelt), his fiduciary representation of her, and his present representation of the petitioner, is rendered in conflict of interest with the AIP, Edda Wogelt; direct Jonathan Bachrach, Esq., to deliver to the court evaluator herein the personalty, and papers of the AIP then in his possession; and for a preference of this matter.
This application to disqualify Jonathan Bachrach, Esq., is supported by Steven Bruce Cottier, Esq., who was appointed counsel to the AIP by order of this court, dated September 12, 1996.
By notice of cross motion, dated September 24, 1996, Jonathan Bachrach, Esq., has cross-moved for an order: "Granting Petitioner’s attorney the amount of $9,895 for services rendered, plus $885.72 in disbursements, for a total of $10,760.72, pursuant to Petitioner’s attorney’s Affidavit of Services, dated December 5, 1995; Granting Petitioner’s Attorney the amount of $17,800.00 for services rendered, plus $3,456.41 in disbursements, for a total of $21,256.41, pursuant to Petitioner’s attorney’s Reply Brief to the Appellate Division; Granting Petitioner’s Attorney’s application herewith for legal fees in the amount of $4,193.00 for services rendered, plus $193.15 in disbursements, for a total of $4,386.15, pursuant to Petitioner’s Attorney’s” and awarding co-counsel Susan Feldman-Gordon, Esq., compensation for services rendered in the amount of $1,250. This presentation of his requested fees is difficult to decipher.
By amended notice of cross motion, dated October 1, 1996, Jonathan Bachrach, Esq., has cross-moved again for compensation, as requested in his original cross motion; sanctions against the court evaluator, Margaret Ann Bomba, Esq., for frivolous *31 conduct in bringing her order to show cause to disqualify Attorney Bachrach, and for a hearing on the factual issues raised herein. Mr. Bachrach, in his amended cross motion, alleges that said court evaluator lacks standing to seek to disqualify him.
A full and complete hearing was conducted by this court on October 2, 1996.
The procedural history of this proceeding is as follows:
Edda Wogelt, a 93-year-old widow, resided alone in an apartment located at 57 West 86th Street, New York, New York, apartment 2C, until the spring of 1995, when she was admitted to Mt. Sinai Hospital, complaining of dizziness.
Jonathan Bachrach, Esq., the attorney who had drafted Ms. Wogelt’s last will and testament, which was executed on December 30, 1994, assisted in the selection, transfer to and placement of the AIP in the Moshulu Parkway Nursing Home, on April 28, 1995. Attorney Bachrach also accepted personal property and seven checks from the AIP. These checks were undated but signed by the AIP herein for payment of her future expenses.
Jonathan Bachrach, Esq., prepared the original order to show cause and petition for the appointment of Hanna Lichtenstein as guardian of Edda Wogelt, together with the supporting affirmations of the petitioner and Mr. Bachrach, said affirmations dated June 23, 1995. Said order to show cause was signed by Justice Wilkins on July 11, 1995. Said supporting affirmations contain information concerning the financial status, health status, and family history of the AIP; Hanna Lichtenstein, in her affirmation, stated that the AIP and the proposed guardian "have always had a friendly familiar relationship and get along well to this day”. Mr. Bachrach, in his affirmation, under penalties of perjury, stated that "Edda Wogelt has mentioned the Lichtensteins’ [sic] to me from time to time in a positive manner, indicating a good and friendly relationship on her part to them”. Said original petition was supported by an affirmation by Dr. Benjamin Rudner, a psychiatrist, who had stated that at that time the AIP, Edda Wogelt, suffered from dementia and needed assistance to manage her financial affairs.
The information as to the AIP’s financial and health status which Mr. Bachrach enumerated in his affirmation in support of this petition was information he had obtained during the period he represented the AIP as her attorney and fiduciary.
*32 That petition, which was dated June 23, 1995, was prepared less than two months after Mr. Bachrach had assisted in the selection and placement of the AIP in the nursing home (Apr. 28, 1995) and less than six months after the execution of the last will and testament of the AIP, which he drafted and was executed under his supervision on December 30, 1994. The file contents reflect that Mr. Bachrach had assembled the family members of the AIP in April 1995, and had discussed the underlying action herein with them.
Due to a defect in service, the original petition was refiled on October 6, 1995. This refiled petition contained affirmations in support executed by Mr. Bachrach and Hanna Lichtenstein, which were dated September 20, 1995.
Mr. Bachrach, on or about July 19, 1995, received a letter from the AIP, Edda Wogelt, dated July 17, 1995, and notarized on July 19, 1995, which stated: "I Edda Wogelt hereby state that I do not want Hanna Lichtenstein and Abraham Lichtenstein to be appointed as my guardian, for reasons known to me. I hereby state that I want Jonathan Bachrach to be appointed my guardian”. After receipt of this letter Mr. Bachrach persisted , in the preparation and refiling of the petition and the supporting affirmation dated September 20, 1995.
At a hearing held before the Honorable Justice Wilkins, on December 1, 1996, the court evaluator, Lee Mager, Esq., first expressed concerns that Mr. Bachrach might be acting under a conflict of interest as the petitioner’s attorney due to his prior representation of Ms. Wogelt. Said court evaluator, in his affirmation dated November 23, 1995, expressed his conclusions that Ms. Wogelt disliked and distrusted the petitioner herein. At said hearing Mr. Bachrach did not call Dr. Rudner to testify in support of the petition. However, Justice Wilkins insisted upon his testimony. Mr. Bachrach objected to the testimony of Dr. Rudner and asserted that no medical testimony was necessary since Dr. Rudner’s affirmation in support of the original petition was sufficient. A review of the record of the proceedings before Justice Wilkins, of December 1, 1995, reveals that Dr. Rudner had changed his opinion due to the fact that when he conducted his prior evaluation of the AIP he did not know that the AIP was "stone deaf’ and could not respond to his questions. Dr. Rudner had informed Mr. Bachrach, prior to the hearing of December 1, 1995, that he had changed his opinion. At the hearing of December 1, 1995, Dr. Rudner testified that:
"At the outset I’d like simply to state I feel in a very uncomfortable position because, ordinarily, when I’m to testify, *33 the petitioning lawyer seems to behave in a more cooperative manner with me.
"The fact is, I spoke to Mr. Bachrach some weeks ago. And he objected to my findings. He disagreed with the fact that I found Mrs. Wogelt mentally competent and indicated to me that he was going to find another psychiatrist to examine her. So I just assumed that his behavior must reflect his feeling about the conclusion I’ve drawn on the case”.
This is a further indication that Mr. Bachrach was acting in an adverse manner to the interests of his former client, Edda Wogelt, the AIP herein, and to her clear detriment. This action is unconscionable.
Throughout this proceeding before Justice Wilkins, Mr. Bachrach maintained that he had no fiduciary relationship with Ms. Wogelt.
In a judgment and order entered on or about January 9, 1996, Justice Wilkins declined to appoint the guardian of the person, and appointed an independent third party, Marion Stone, as guardian of Ms. Wogelt’s property. Justice Wilkins further awarded $1,000 in legal fees and $885.72 in disbursements to Mr. Bachrach; $500 to his co-counsel; and $500 in fees to the court evaluator.
The petitioner appealed and the Appellate Division, by decision entered July 25, 1996, reversed the judgment and order of Justice Wilkins and remanded the matter for a new hearing (Matter of Wogelt, 223 AD2d 309 [1st Dept 1996]).
Although the issue of the conflict of interest was not presented to the Appellate Division, said Court noted: "While we ascribe only the most honorable of intentions to Attorney Bachrach, the record plainly reflects continuing and conflicting interests arising from his representation of the petitioner and his actions on behalf of the AIP” (Matter of Wogelt, 223 AD2d, supra, at 315 [1st Dept 1996]).
Upon remand, this proceeding was assigned to this court. Upon reassignment this court requested that a copy of the last will and testament of the AIP, Edda Wogelt, be produced for an "in camera inspection”.
Mr. Bachrach complied with the court’s direction and submitted a copy of this last will and testament, which the court examined "in camera”. Such examination reveals that the nominated executor and the nominated substitute executor are both attorneys who are closely associated with Mr. Bachrach. It was developed by the court at the hearing on the order *34 to show cause and cross motions herein, that the nominated executor is a New York court-employed attorney who had referred other matters, including this particular matter involving Ms. Wogelt, to Mr. Bachrach. This was in fact acknowledged by Mr. Bachrach. Mr. Bachrach further acknowledges that the nominated substitute executor is an attorney associated with Mr. Bachrach’s law firm and had no previous relationship with the AIP.
A full and complete hearing on this order to show cause and cross motion and amended cross motion was duly held by this court on October 2, 1996, and all parties were given a full opportunity to present their various claims and their respective positions involved herein.
On the issue of the disqualification of Jonathan Bachrach, Esq., as an attorney for the petitioner, Hanna Lichtenstein, given Mr. Bachrach’s involvement in the affairs of the AIP prior to the commencement of these proceedings and the findings of the Appellate Division where it stated that the AIP was of the belief that Mr. Bachrach represented her after the initial petition was filed, it is apparent and well settled that he may not both appear for and oppose a client on substantially related matters when the clients’ interests are adverse (see, Greene v Greene, 47 NY2d 447, 451 [1979]). The rule fully implements an attorney’s fiduciary duties of loyalty and confidentiality to the client and his ethical obligation to avoid the appearance of impropriety (Solow v Grace & Co., 83 NY2d 303, 306 [1994]; Adams v Lehrer McGovern Bovis, 208 AD2d 377 [1st Dept 1994]). Mr. Bachrach, by commencing the guardianship proceeding and representing the petitioner in the same matter is clearly in an adverse position to the AIP.
Historically, attorneys have been strictly forbidden from placing themselves in á position where they must advance, or even appear to advance, conflicting interests (see, e.g., Greene v Greene, supra, at 451; Cardinale v Golinello, 43 NY2d 288, 296; Eisemann v Hazard, 218 NY 155, 159). "The standards of the profession exist for the protection and assurance of the clients and are demanding; an attorney must avoid not only the fact, but even the appearance, of representing conflicting interests” (Cardinale v Golinello, supra, at 296). Here Mr. Bachrach’s representation of the petitioner clearly advances conflicting interests to the detriment of the AIP.
This principle of avoiding even the appearance of impropriety is related to an attorney’s duty of loyalty to a former client. The proscription against taking a case adverse to a former cli *35 ent is predicated first and foremost on the broad duty of loyalty and then secondarily on the possibility of the use in the second representation of information confidentially obtained from the former client in the first representation (Cardinale v Golinello, supra, at 295). In other words, even if the attorney did not, in fact, obtain, or use adversely, any confidential information in connection with the first employment, the former client is entitled to freedom from apprehension and to the certainty that her interests will not be prejudiced in the present suit by the representation of the opposing litigant by the client’s former attorney (Cardinale v Golinello, supra, at 296; see also, People v Shinkle, 51 NY2d 417, 421).
"A party seeking to disqualify an attorney or a law firm, must establish (1) the existence of a prior attorney-client relationship and (2) that the former and current representations are both adverse and substantially related” (Solow v Grace & Co., 83 NY2d, supra, at 308).
"In order to meet the 'substantial relationship’ test, the issues in the present litigation must be ' "identical to” ’ or ' "essentially the same” as’ those in the prior case before disqualification will be granted” (Lightning Park v Wise Lerman & Katz, 197 AD2d 52, 55 [1st Dept 1994]; District Council 37 v Kiok, 71 AD2d 587 [1st Dept 1979]). The issues involved in the present controversy are directly related to Mr. Bachrach’s admitted prior representation of the AIP who became infirm and unable to manage her affairs while he was representing her. The issues concerning the nature of the AIP’s assets, the petitioner’s current retention of Mr. Bachrach, and Ms. Wogelt’s current status as an impaired person, all overlap.
While any fair rule of disqualification should consider the circumstances of the prior representation, if an attorney has represented a client in an earlier matter and then attempts to represent another in a substantially related matter which is adverse to the interests of the former client, the presumption of disqualification is irrebuttable.
Additionally, it should be noted that "doubts as to the existence of a conflict of interest must be resolved in factor of disqualification”. (Ocko Found, v Liebovitz, 155 AD2d 426.) Similarly, even if there is currently insufficient evidence at this juncture to justify disqualification, a hearing should be held to make such a determination (see, Lightning Park v Wise Lerman & Katz, supra).
The Court of Appeals in Solow (supra) noted that first among these concerns is the protection of client confidences. "An at *36 torney may not disclose or use adversely information confided by former or current clients (Code of Professional Responsibility DR 4-101 [B] [22 NYCRR 1200.19 (b)]; and see, Code of Professional Responsibility DR 5-108 [A] [2] [22 NYCRR 1200.27 (a) (2)]). When an attorney represents a party against a former client the current client’s interest in vigorous representation potentially threatens the former client’s expectation of confidentiality. The rule is designed to free the former client from any apprehension that matters disclosed to an attorney will subsequently be used against it in related litigation” (see, Solow v Grace & Co., 83 NY2d, supra, at 309; Cardinale v Golinello, 43 NY2d, supra, at 295; Code of Professional Responsibility DR 4-101 [22 NYCRR 1200.19]). "Thus, the Code imposes a continuing obligation on the attorney to respect the client’s confidences, even after a matter has concluded. The use of an irrebuttable presumption of disqualification insures that this obligation is enforced and that client confidences and secrets will never be misused in substantially related and adverse litigation” (Solow v Grace & Co., 83 NY2d, supra, at 309).
Second, the Court noted that "the rule avoids the 'appearance of impropriety’ on the part of the attorney or the law firm. Whether a conflict actually exists could be determined by a hearing but the rule requires disqualification even when there may not, in fact, be any conflict of interest so that any suggestion of impropriety is avoided (see, Cardinale, 43 NY2d, at 296; Code of Professional Responsibility Canon 9; Conflicts of Interest, op. cit, at 1358-1359; Note, Attorney Disqualification: The Case for an Irrebuttable Presumption Rebutted, 44 Alb L Rev 645, 649-650)” (Solow v Grace & Co., 83 NY2d, supra, at 309).
"An irrebuttable presumption of disqualification is favored over a hearing because it avoids the danger that an inquiry may destroy the very confidences sought to be protected (see, NCK Org. v Bregman, 542 F2d 128, 134-135; Conflicts of Interest, op. cit., at 1329)” (Solow v Grace & Co., 83 NY2d, supra, at 309).
Finally, the Court stated "the rule provides a test which, because of the ease of its application, becomes a strong aid in self enforcement among members of the legal profession” (So-low v Grace & Co., 83 NY2d, supra, at 309).
Despite the per se rule, it is well established that if there exists even the possibility of a conflict of interest, it must be resolved in favor of disqualification (see, e.g., Matter of Fleet v Pulsar Constr. Corp., 143 AD2d 187, 189 [2d Dept 1988]; Sirianni v Tomlinson, 133 AD2d 391, 392 [2d Dept 1987]).
*37 Accordingly, this court grants that branch of the motion to disqualify Mr. Bachrach to avoid any real or any perceived inferences of impropriety.
As to the cross motion of the petitioner’s attorney, Jonathan Bachrach, which seeks legal fees herein, this court, in reviewing the entire proceeding, and after the full hearing conducted, finds that Mr. Bachrach, even viewing his intention in the most favorable light, did not appreciate his conflict of interest when he first conferred with the petitioner herein, in April and May of 1995, at which time he disclosed confidential information he had obtained, both financial and personal, from the AIP, Edda Wogelt, during his representation of the AIP.
However, as of July 19, 1995, upon receipt of the AIP’s notarized letter, in which the AIP in clear and unequivocal terms informed Mr. Bachrach that she was opposed to the appointment for Hanna Lichtenstein as her guardian, and wished Mr. Bachrach to be so appointed, it should have been abundantly clear to Mr. Bachrach that he had a clear conflict of interest.
Ms. Bomba, the court evaluator, has taken the position that Mr. Bachrach, due to his conflict of interest, is not entitled to any fees for the services he performed. Mr. Cottier, the court-appointed attorney, has taken the position that Mr. Bachrach should be entitled to reasonable fees for the services he rendered.
In Matter of Merrick (107 Misc 2d 988), a guardian ad litem who had resigned his position due to an apparent conflict of interest sought compensation for the legal services he had rendered prior to his resignation. That court ruled that "[i]t would now be improvident for the court to saddle this estate with additional guardian ad litem counsel fees” and denied the application (supra, at 991; see also, Schwartz v Jones, 58 Misc 2d 998, 999 ["(w)here the attorney is discharged for cause or withdraws without reason, he forfeits his fee”]).
This court, in its discretion, will permit a fee to be paid to Jonathan Bachrach, Esq., for the legal services he rendered up to mid-July 1995, when he should have realized that there was a conflict of interest in his representation of the petitioner herein. Based upon the affirmation of services, dated December 5, 1995, Mr. Bachrach stated that up to and including July 1995, he performed 10.7 hours of service. Accordingly, this court awards Mr. Bachrach a fee of $1,605, which represents 10.7 hours of service; and disbursements in the amount of $245 which represents the purchase of an RJI and index number, *38 plus $150 which represents the approximate cost for a process server for the service of the first order to show cause, for a total of $395.
The fee awarded is based upon the factors enumerated in Matter of Karp (145 AD2d 208). The Court, in Karp (supra, at 215), listed these factors as: " '[T]he time spent, the difficulties involved in the matters in which the services were rendered, the nature of the services, the amount involved, the professional standing of the counsel, and the results obtained’ ”.
Mr. Bachrach’s expertise in this field, in light of the fact that he felt compelled to retain co-counsel (Ruth FeldmanGordon, Esq.) to assist him in the hearing conducted before Justice Wilkins, is not of such quality to warrant a larger fee. (Justice Wilkins had awarded a fee of $500 to Ms. FeldmanGordon, Esq.)
Notwithstanding the issue of Mr. Bachrach’s conflict of interest, the initial proceeding was an ordinary, noncomplex Mental Hygiene Law article 81 proceeding. It appears to the court that Mr. Bachrach, who should have known of his conflict of interest since July 19, 1995, has persisted to date in his representation of the petitioner herein and himself, in his quest for legal fees, and continues to refuse to either recognize this clear conflict of interest or withdraw as attorney for petitioner.
Accordingly, the cross motion for legal fees is granted to the extent as indicated above.
Furthermore, since the application to disqualify Jonathan Bachrach, Esq., as attorney for the petitioner herein has been granted, the court hereby appoints Erwin Greenwald, Esq., 369 East 149th Street, Bronx, New York 10455, as temporary guardian, until a guardian is appointed, and further grants the petitioner, Hanna Lichtenstein, 60 days from entry of this decision and order to obtain new counsel if petitioner so desires.
The court, at the appropriate time, upon submission of affirmations of services rendered, will award legal fees to the court evaluators, Lee Mager, Esq., and Margaret Ann Bomba, Esq., the court-appointed attorney Steven Bruce Cottier, Esq., and any other parties who have rendered services herein pursuant to and consistent with Matter of Karp (supra).
The branch of the motion which seeks a preference is granted and the branch of the motion which seeks the delivery of the personalty and papers of the AIP by Mr. Bachrach has been complied with.
The branch of the cross motion which seeks a hearing on these issues is denied as moot, said hearing having been held *39 on October 2, 1996. The branch of the cross motion which seeks sanctions against the court evaluator, Ms. Bomba, is denied, said court evaluator having standing to bring the order to show cause for the disqualification of Mr. Bachrach. The branch of the cross motion which seeks a legal fee in the amount of $1,250 for Mr. Bachrach’s co-counsel, Ruth Feldman-Gordon, Esq., is disposed of by awarding her a fee for legal services in the amount of $500.