■ In the Matter of GEORGE KHOUBESSERIAN, Respondent. ARNOLD SPIEGEL, Nonparty Appellant. [695 NYS2d 312] —Order, Supreme Court, New York County (Richard Lowe, III, J.), entered September 10, 1997, which, *inter alia*, nullified an attorney's fee of $33,332.12 and substituted therefor a fee of $3,000, unanimously modified, on the law, the facts and in the exercise of discretion, the $33,332.12 fee reinstated in lieu of the $3,000 award, and otherwise affirmed, without costs.

In 1987, Madeline Minassian, then in failing health, granted a durable power of attorney (General Obligations Law § 5-1505) to her sister, Adrienne. In 1993, Adrienne, also in failing health, consulted her attorney at law, Spiegel, about drafting a will. She also executed a power of attorney, delegating to Spiegel the increasingly burdensome powers that Madeline had delegated to her six years earlier. Spiegel discussed compensation with Adrienne, and she agreed to an arrangement whereby Spiegel could retain, without court approval, one-third of any funds collected on Madeline's behalf.[1]

Spiegel was aware that Madeline had been an employee of Pan American World Airways (Pan Am), and was receiving a

---

1. Adrienne actually executed two powers of attorney on August 12, 1993. They are identical, except that one of them contains an extra paragraph setting forth this fee arrangement.

monthly pension from that company. In late 1993, with Pan Am in bankruptcy, Spiegel inquired of the trustee and the administrator of the pension plan, and determined that Madeline was entitled to a one-time reimbursement toward her nursing home expenses. Spiegel quickly obtained and filed the necessary papers, and within seven months he received three payments totaling the maximum benefit of $100,000, from which he deducted $33,332.12 (33.3% of the total) as his fee. Adrienne died in early 1994, during this application process, but before any of the funds had been recovered.

Petitioner brought the instant proceeding in 1996 for appointment as his Aunt Madeline's guardian. The court agreed that Madeline was, by this time, incompetent, and granted the petition. During the course of examining Madeline's financial affairs, a court-appointed evaluator discovered the 1994 insurance recovery and Spiegel's fee, which petitioner challenged as an unauthorized disbursement from Madeline's assets.

The IAS Court found that Spiegel's transactions on Madeline's behalf were proper, but characterized the fee as "overreaching" and "unreasonable," and ordered Spiegel to return it in exchange for a more reasonable compensation of $3,000. Madeline died during the pendency of Spiegel's appeal from this ruling.

In overturning Spiegel's fee, the IAS Court noted that Adrienne's delegation of authority to Spiegel had been without Madeline's knowledge or consent. Inasmuch as Madeline had neither appointed Spiegel nor ratified his appointment, he was left, after Adrienne's death, without anyone to supervise his activities, and therefore, Madeline's best interests dictated that Spiegel's power of attorney be voided. We disagree.

Madeline's 1987 statutory short form power of attorney to Adrienne included the pursuit of all "claims and litigation,"[2] and specifically, "insurance transactions,"[3] as well as the "full and unqualified authority * * * to delegate any or all of the foregoing powers to any person or persons whom my attorney(s)-in-fact shall select" (see, General Obligations Law § 5-1501 [1]). A fair reading of these enumerated powers permits either the further delegation of authority or the hiring of an attorney to accomplish these ends.

The court evaluator's investigation revealed that even after

---

2. This generally includes pursuit of a claim on the principal's behalf, by litigation or otherwise (General Obligations Law § 5-1502H [10]).

3. See, in particular, General Obligations Law § 5-1502F (4), (11) and (12).

Adrienne's death, Spiegel continued to manage Madeline's financial affairs. This included maintaining her checking account, into which were deposited all pension, interest and dividend receipts, and arranging for the monthly payment of her nursing home bill, as well as Spiegel's own monthly fees, which totaled about $6,000 over a 2½-year period. The record reveals that from September 1993 through March 1996, Spiegel provided monthly statements detailing his professional services on Madeline's behalf. Until Adrienne's death in January 1994, these statements were addressed in care of Adrienne; thereafter, they were addressed in care of himself. From October 1993 on, most of these statements charged a half-hour of billable time, at $225 per hour, and only three statements during that period exceeded 1½ billable hours. This all indicates that the task Spiegel undertook at Adrienne's behest in 1993[4] continued without pause for more than two years after her death. Even though this compensation is not being challenged on this appeal, it does indicate continuous performance on Madeline's behalf long after the death of Spiegel's principal, contradicting the IAS Court's conclusion that Madeline's best interests dictate the nullification of Spiegel's power of attorney.

The IAS Court failed to mention the court evaluator's second report, which spoke of Spiegel's management of Madeline's financial affairs as "careful," "quite thorough" and "accurate," with "no discrepancies." Even though the fee for the insurance collection was considered "generous," Madeline would never have netted any of the more than $66,000 recovery without Spiegel's timely and professional pursuit of this claim.

We do not rule, as a matter of law, that a power of attorney necessarily survives beyond the death of the principal. However, on this set of facts, where Spiegel continued to work on behalf of his late principal's principal, we hold that there was no evidence of overreaching or unreasonable exercise of that power. Even the IAS Court recognized that Spiegel's "unauthorized" exercise of power was worthy of some compensation ($3,000). Adrienne had every right to hire an attorney under appropriate terms, and the court evaluator's investigation justifies the fee as compensation for Spiegel's diligence and professional expertise (*see, Matter of Freeman*, 34 NY2d 1, 9). Concur—Ellerin, P. J., Wallach, Lerner and Friedman, JJ.

---

4. Adrienne's competence to execute a power of attorney has never been challenged, and therefore must be presumed.