In the Matter of MARY J., a Person Alleged to be Incapacitated, Appellant. ALBANY COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; VIOLA J., Appellant. [736 NYS2d 542] —Peters, J. Appeal from an order and judgment of the Supreme Court (Teresi, J.), entered March 2, 2001 in Albany County, which, inter alia, granted petitioner's application, in a proceeding pursuant to Mental Hygiene Law article 81, to appoint a guardian for the personal needs and/or property management of respondent.

Respondent, a widowed 91-year-old woman, was admitted to St. Peter's Hospital in the City of Albany on November 8, 2000 with a fractured right hip and extreme dementia. She was discharged on November 14, 2000 and admitted to the Villa Mary Immaculate Nursing Home in Albany County. At such time, respondent's three children, two daughters and a son, agreed that her placement in the nursing home was proper. On the date of her discharge, she executed both a durable power of

attorney authorizing each of her children to act as her attorney-in-fact with one of her daughters, Viola J., further authorized to make necessary medical decisions by health care proxy.

Prior to hospitalization, respondent resided in her own home in the City of Watervliet, Albany County, with Viola. Respondent's son, Harold J., lived across the street with his own family and he visited approximately once a week. Respondent's other daughter, Patricia N., resided in Pennsylvania, and regularly visited once a month. Respondent was also visited by her 83-year-old sister, who is a nun residing at the Sisters of Mercy Mother House in Albany.

As a result of respondent having a small stroke in 1998, Viola assumed an increased role in respondent's care. It appears undisputed that, from that time forward, respondent's health began to deteriorate. By October 2000, respondent was experiencing falls, edema and sores which did not heal well. Her fall on November 8, 2000 necessitated the hospitalization that led to her discharge to the nursing home. Until one week prior to the hearing in this matter, Viola worked full time for the Department of Motor Vehicles. By the time of the hearing, she had retired and intended to move to Florida with respondent to live in a home that she had already purchased.

Petitioner initiated this proceeding pursuant to Mental Hygiene Law article 81 seeking the appointment of a guardian for respondent. Respondent's attorney sought to dismiss the petition, alleging insufficiency in accordance with the requirements of Mental Hygiene Law § 81.08. The petition alleged that respondent was incapable of independently performing her activities of daily living, complicated by her inability to ambulate, and that she required two people to lift her and one to help her with her daily functions. Her short-term memory impairment further precluded independence since she was unable to administer her own medication. The petition further alleged that she was likely to suffer harm because she cannot adequately understand and appreciate the extent and nature of her physical disabilities, finances, debts and obligations as a result of her condition. It appears that the petition was necessitated because Viola sought to remove her from the nursing home.

At the hearing held on January 31, 2001 at the nursing home, respondent was represented by counsel. She clearly expressed her desire to have Viola care for her in the event that Supreme Court determined that a guardian was necessary. Debra De Luke, the head nurse at the nursing home, confirmed the allegations in the petition, testifying that respondent

continues to need a two person transfer to get her out of her bed and one person for other types of transfers such as toileting. She also confirmed respondent's inability to dispense her own medications and her need for 24-hour care and supervision. In connection therewith, the psychodiagnostic assessment was admitted, which confirmed the diagnosis of dementia with depressed mood. Elaine Sullivan, a physical therapy assistant at the nursing home, also testified in a manner consistent with De Luke. All of respondent's children testified, with Viola clarifying that she recently retired and would be able to provide respondent with all necessary care upon their permanent move to Florida, despite her current lack of planning for services deemed necessary for respondent's care.

The report of the court evaluator was also admitted into evidence. It noted that all of respondent's children, as well as her sister, agreed that respondent has improved significantly since her placement in the nursing home. It further noted that the hospital's discharge summary contained a memo which indicated that "[d]ementia seems to be the overlapping diagnosis" and that respondent's needs would best be met in a nursing home. Although respondent's preference for Viola as her guardian and living at home was clearly noted, the evaluator recommended that Harold and Patricia be appointed guardians.

Supreme Court concluded that respondent was an incapacitated person within the meaning of Mental Hygiene Law § 81.15 and followed the recommendation of the court evaluator in appointing Harold and Patricia as coguardians. It further characterized respondent's cross motion for guardianship as a "cross petition" and dismissed it by finding insufficient evidence to support the request. Respondent and Viola appeal.

Acknowledging that Mental Hygiene Law § 81.08 mandates that a petition for the appointment of a guardian must contain "specific factual allegations" as to the personal actions or financial transactions which demonstrate that respondent would likely suffer harm because she cannot understand and appreciate the nature and consequences of her inabilities (*see,* Mental Hygiene Law § 81.08 [a] [4], [5]; *see, Matter of Petty,* 256 AD2d 281, 283), we find the subject petition to be sufficient. It detailed the nature and extent of respondent's physical and mental disabilities through statements of her doctor and social worker at the nursing home, and asserted that, despite these conditions and the assistance necessary, Viola has refused to allow a social worker to conduct a home visit of the Watervliet residence.

Concerning the propriety of the appointment of a guardian,

again we find no error. Notably, this issue was not aggressively contested, although Viola contended that respondent's needs could be met by less drastic measures. Relying upon the dictates of Mental Hygiene Law § 81.02 (a) for such appointment, however, we find that Supreme Court properly evaluated the relevant evidence. Further, the court properly revoked the durable power of attorney and health care proxy since they were executed by respondent during a time that she was suffering from extreme dementia (*see*, Mental Hygiene Law § 81.21 [d]) and, therefore, she was incapacitated (*see, Stackrow v New York Prop. Ins. Underwriter's Assn.*, 115 AD2d 883, 885). Considering her functional level as affected by her physical and mental limitations, convincing evidence was presented that respondent was "likely to suffer harm because [she] is unable to provide for [personal needs and/or] property management and cannot adequately understand and appreciate the nature and consequences of such inability" (*Matter of Maher*, 207 AD2d 133, 140, *lv denied* 86 NY2d 703; *see*, Mental Hygiene Law § 81.02 [a] [2]; [b] [2]). Mindful that a guardian should only be appointed "as a last resort" (*Matter of Maher, supra* at 140), and even acknowledging respondent's contrary wishes, there exists no discernable error.

Nor do we find error in the appointment of Harold and Patricia as coguardians when viewing the mandates of Mental Hygiene Law § 81.19 (d) regarding their eligibility and the import of allowing respondent to remain in the Albany area where she has resided all of her life in an environment proven to be effective for her at this time. The order implementing such determination allows for flexibility by these guardians to provide for all of respondent's personal needs, which may include a later determination of whether to maintain her in this setting.

Mercure, J.P., Mugglin, Rose and Lahtinen, JJ., concur. Ordered that the order and judgment is affirmed, without costs.