OPINION OF THE COURT
John M. Leventhal, J.
The issue before this court is whether an individual who had served as a court evaluator in a proceeding brought pursuant to article 81 of the Mental Hygiene Law may bid on the sale of the incapacitated person’s (hereinafter IP) real property at a public auction.
This guardianship proceeding was commenced by a residential nursing facility in which the IP had resided. The IP is an elderly woman. She has two surviving children. One son resides in Trinidad and the other in London. The IP owns an apartment in Brooklyn. In sum, the petition alleged that the IP suffered from dementia and that the appointment of a guardian was necessary.
A court evaluator was appointed. The report submitted by the evaluator recommended the appointment of a guardian and suggested that the court consider selling the apartment.
A hearing was held on November 10, 2004. The capacity of the IP was undisputed. Findings of incapacity and the need for the appointment of a guardian were made. The plan put forth by the son of the IP and accepted by the court was to move the IP back to her native Trinidad to reside with her son and daughter-in-law. The son in London came to New York to assist in the move and to escort his mother to Trinidad. An independent special guardian of the property was appointed to sell the IP’s apartment. A final order and judgment was signed on February 16, 2005.
An independent real estate appraiser on the Office of Court Administration’s (hereinafter OCA) approved list was appointed to appraise the property. An order was then issued directing the sale of the real property in accordance with RPAPL 1722 (5). The property was to be auctioned by this court. The notice of this auction was placed in a Brooklyn newspaper with a countywide distribution and published for four consecutive weeks. The special guardian was also directed to send notice of the sale to the condominium board as well as the tenants and owners of the complex. An advertised open house was held by the special guardian two days before the auction. The court has been provided with the names and phone numbers of those who at *249 tended the open house. The goal of this method of sale was to secure the highest price possible for the property.
On March 2, 2006, the auction was conducted. Only two bidders appeared. The minimum/opening bid was the appraised value of the real property. The highest bid was $500 over the appraised value. The court did not realize until after the auction that the highest bidder had been the court evaluator.[1]
On March 9, 2006, this court held a conference with the guardian and both bidders on the property. The purpose was to ascertain if the successful bidder had access to any “insider information,” as a former fiduciary, on the property or the sale. The court also held argument on whether a former fiduciary should be permitted to bid on and to purchase an IP’s property.
At this conference, the successful bidder indicated that he had learned of the sale from the advertisement. He maintained that he did not see the apartment while acting as court evaluator,[2] and he did not attend the open house, although he had looked at another apartment in the complex several years prior to this guardianship. The successful bidder asserted that he did not see the appraisal on the property and possessed no inside information. The successful bidder contended that he was purchasing this property for his personal residence. The special guardian maintained that a few weeks prior to the sale she had forwarded a copy of the advertisement to the successful bidder. The unsuccessful bidder owns other units and resides in the building. She saw the apartment prior to the sale and attended the open house.
Initially, the court notes that it finds that there was nothing per se improper about the sale or the bidding on this property. This was a public auction. There is no statute or rule that prohibits a court evaluator from bidding on property.[3] The successful bidder did not have any information regarding the property or sale that the other bidder did not possess. In fact, the other bidder had more information.
A court evaluator, however, is a fiduciary. An examination of the duties, responsibilities and the requirements necessary to *250 be a court evaluator must be examined to determine the standard that ought to be applied.
Mental Hygiene Law § 81.09 requires that the court appoint a court evaluator at the time it issues an order to show cause. The court evaluator must be an individual maintained on an OCA list (Mental Hygiene Law § 81.09 [b]). OCA has educational requirements and standards that must be met before someone may become a court evaluator (see, Rules of Chief Judge [22 NYCRR] § 36.3). There is an application process and an evaluator may be placed on and/or removed from the OCA list (see, 22 NYCRR 36.3 [e]).
The duties of a court evaluator are that of
“an independent investigator, empowered to assist the court in independently assessing the totality of circumstances affecting the person alleged to be incapacitated (AIP), determining the AIP’s personal capabilities, marshalling the AIP’s resources, selecting and empowering an appropriate guardian, and assuring that the due process rights of the AIP are not violated” (Matter of Wogelt, 223 AD2d 309, 313-314 [1996]; see also, Bailly, Practice Commentaries, McKinney’s Cons Laws of NY, Book 34A, Mental Hygiene Law § 81.09, at 303, citing Law Rev Commn Comments, reprinted following McKinney’s Cons Laws of NY, Book 34A, Mental Hygiene Law § 81.09, at 308).
The evaluator is to aid the court and to make recommendations regarding the personal and property needs of an IP (Matter of Lee I., 265 AD2d 750 [1999]). The recommendations, findings and suggestions not only assist the court in its initial findings, but may be relied upon and looked to during the lifetime of the guardianship (55th Mgt. Corp. v Goldman, 1 Misc 3d 239 [2003]). The evaluator has substantial input into the court’s findings. The court must be assured that an evaluator is impartial and that the evaluator’s only interest is to provide accurate and reliable information and unbiased recommendations to the court. In fact, a majority of court evaluators, including this evaluator, affirm at the beginning of their reports that they are not related to the AIP nor have any interest in AIP’s property nor possess any interest adverse to the AIR
The court evaluator is vested with the authority to review personal and confidential information regarding an alleged incapacitated person. The evaluator has this authority by virtue of his/her position as court evaluator (see, Mental Hygiene Law *251 § 81.09 [c] [5] [vii], [ix]; [6]; [d], [e]). The court evaluator has authority to manage an AIP’s property to prevent waste, prior to seeking permission of the court (Mental Hygiene Law § 81.09 [e]). These powers are an extension of the powers given to the court. They are given to assist the court and to protect an alleged incapacitated person. In short, the court evaluator is the “eyes and ears” of the court (see, e.g., Matter of G.G., 4 Misc 3d 1025[A], 2004 NY Slip Op 51043[U] [Sup Ct, Kings County 2004]).
The court evaluator’s function is thus quasi-judicial in nature (see, e.g. the duties and responsibilities mandated and articulated by the Mental Hygiene Law; see also, 55th Mgt. Corp., supra). Canon 2 of the Code of Judicial Conduct holds a judicial office to the high standard of avoiding even the “appearance of impropriety.” A judicial office must not be used to promote the private interests of that office (Rules of Chief Admin of Cts [22 NYCRR] § 100.2). The standard of avoiding “even the appearance of impropriety” must apply to anyone performing a “quasi-judicial function” (De Camp v Good Samaritan Hosp., 66 AD2d 766, 768 [1978]). Accordingly, this court finds that the standard of avoiding the “appearance of impropriety” applies to a court evaluator and any fiduciary independently appointed by the court.
The purchase of an IP’s property by a fiduciary, such as a court evaluator, gives the appearance of impropriety. It raises questions as to whether the evaluator reviewed and used confidential information to his/her advantage. It questions the motive behind the recommendations made to the court. It creates a conflict of interest between the court evaluator as a purchaser to obtain the property for the lowest price and the IP, to receive the highest price for the property. These appearances directly reflect upon the integrity of a court’s findings, rulings and other actions in a guardianship proceeding. A purchase of an IP’s property by a (former) court evaluator implicates the canons of judicial conduct in that it negatively affects the public confidence in the integrity and impartiality of the judiciary (see, 22 NYCRR 100.2).
The court suggests and recommends that the rules be amended to bar all fiduciaries independently appointed[4] by the court from purchasing any property of an IP Such a rule would *252 avoid any confusion and any appearance of impropriety. In the interim, this court shall amend its own rules and prohibit any fiduciary independently appointed by this court from purchasing or attempting to purchase any property of an IP in any guardianship matter in which they serve or had served.
In light of the above, the court evaluator in this matter is barred from purchasing the real property of the IP. The bid proffered by the former court evaluator is voided and the down payment is ordered returned. The other bidder may purchase the real property by matching the highest bidder, in addition to paying the costs of the advertising. This court is serving a copy of this decision and order on all parties. The unsuccessful bidder is to notify the guardian, in writing, within seven days from service of this decision and order as to whether she will purchase the property. The terms of the sale set forth at the auction shall apply to the sale to the unsuccessful bidder.

. The court evaluator’s duties had been completed when he was relieved from his responsibilities on or about February 16, 2005.

. This is consistent with the report of the court evaluator wherein he advised that he was not able to gain access to the apartment.

. This court has not been able to locate any statute, rule, regulation or any other proscription that prohibits the evaluator from purchasing the property.

. There should not be an absolute bar to purchasing property by a fiduciary such as a family member or other family nominated fiduciary. Any such prospective purchase will be decided on a case-by-case basis. In these in *252 stances, full disclosure to the court on the record shall be required prior to bidding on an IP’s property.