[646 NYS2d 94]

In the Matter of EDDA WOGELT, a Person Alleged to be Incapacitated. HANNA LICHTENSTEIN, Appellant; MARION STONE, as Designated Guardian, Respondent.

First Department, July 25, 1996

## APPEARANCES OF COUNSEL

*Felice Wechsler* of counsel *(Marvin Bernstein, Director, Mental Hygiene Legal Service, First Judicial Department,* attorney), for Edda Wogelt.

*Jonathan David Bachrach, P. C.,* New York City, for appellant.

## OPINION OF THE COURT

MURPHY, P. J.

Edda Wogelt, a 93-year-old widow of independent means and self-reliant inclination, resided alone in an apartment on

Manhattan's Upper West Side until May 1995. At that time, complaining of dizziness, she was admitted to Mount Sinai Hospital. Following consultation with officials from Mount Sinai, Jonathan David Bachrach, an attorney who had drafted Ms. Wogelt's will two years before and upon whom she had thereafter relied for the performance of various minor services, arranged for her admission to the Mosholu Parkway Nursing Home in The Bronx (Mosholu).

In July 1995, petitioner Hanna Lichtenstein, Wogelt's second cousin by marriage, commenced this proceeding, pursuant to Mental Hygiene Law article 81, seeking to be appointed as guardian of Ms. Wogelt's person and property. The petition alleged that Ms. Wogelt was incapacitated and should be moved to an Orthodox Jewish nursing home in Monsey, New York, in order to satisfy her religious needs and place her close to petitioner. Petitioner's counsel on this petition was Attorney Bachrach.

Apparently due to a defect in service, the petition was refiled on October 6, 1995. The court scheduled a hearing for November 17, 1995,* later adjourned to December 1 for good cause shown. Meanwhile, the court-appointed evaluator presented an affirmation making general observations about Ms. Wogelt's medical condition, noting her financial indebtedness to Mosholu, and expressing some concerns that Attorney Bachrach, having provided various services for Ms. Wogelt in the past, might be acting under a conflict of interest as petitioner's attorney. The evaluator recommended further medical examination "and, possibly, appointment of counsel for [Ms. Wogelt]". On November 23, the evaluator filed a second affirmation with the court, expressing his conclusions that Ms. Wogelt, though suffering from a hearing impediment, was capable of choosing her own residence and appeared satisfied at Mosholu; Ms. Wogelt disliked and distrusted petitioner; there were inconsistencies in the medical opinions of Mosholu staff as to whether Ms. Wogelt suffered from Alzheimer's disease or was able to manage her finances.

At a hearing held at Mosholu on December 1, 1995, the court heard testimony from Dr. Benjamin Rudner, the consulting psychiatrist at Mosholu, that Ms. Wogelt was suffering "mild to moderate dementia"; she was able to recognize and greet people in an appropriate fashion; she was able to communicate

---

* The record contains no explanation as to why the court declined to set a return and hearing date 28 days from the filing date of the petition, as required by Mental Hygiene Law § 81.07 (a).

in writing, though her deafness impeded oral communication; she had an awareness of her financial situation. In response to a note presented to her by Dr. Rudner at the hearing, and a query from the court, Ms. Wogelt declared: "I feel good in my mind. * * * It's about money. They want to take the money. And the money is mine. I worked my hard life with my husband. We had a long time, 30 years, and another 30 years. It's still nothing that is Hanna's money. I would give away my money to no one. That is mine. When I close my eyes, then they have it, I don't know what's going on." Apart from this written exchange, the court did not call or permit Ms. Wogelt to testify at the hearing.

Additional evidence adduced at the hearing included testimony by Helen Sicker, director of social work at Mosholu, that Ms. Wogelt was able to dress, perform light housework in her room, socialize with other residents, participate in religious services, and perform other simple domestic activities; Ms. Wogelt was very concerned about her finances, did not wish her family to be involved in her affairs, and believed that her family was "out to get [her] money". Petitioner testified that she had visited Ms. Wogelt once or twice a year prior to her admission to Mosholu; if appointed guardian, she would "possibly" move Ms. Wogelt to a nursing home in Monsey; she believed that her husband was a beneficiary under Ms. Wogelt's will; and she was aware that Ms. Wogelt disliked both petitioner and petitioner's husband. The court evaluator reported, *inter alia*, his conclusions that Ms. Wogelt did not require appointment of an attorney or a broadly empowered guardian of the person, but did require some assistance in managing her finances. The record also indicates that, after arranging Ms. Wogelt's admission to Mosholu, Attorney Bachrach had received and inventoried valuables from Ms. Wogelt's apartment and maintained them in a safe at his office; he had arranged to have Ms. Wogelt's mail forwarded to his office, in his words, in order to "keep in touch with any important developments and help her with those"; he received seven blank checks signed by Ms. Wogelt, and used six of those checks to pay various bills on her behalf between May and September 1995. Furthermore, the Trial Judge noted at the commencement of the hearing that Ms. Wogelt "wants to have a personal conversation with the petitioner's attorney, and that he will understand everything, and he will be told everything, and that she doesn't want to speak out loud in front of everyone else." In contrast, Attorney Bachrach maintained throughout

the proceeding and after that he had no fiduciary relationship with Ms. Wogelt.

In an order and judgment (one paper) entered on or about January 9, 1996, the hearing court, concluding that Ms. Wogelt "has functional limitations which necessitate[ ] [help] with her property management", declined to appoint a guardian of the person, and appointed an independent third party, Marion Stone, as guardian of Ms. Wogelt's property. The court awarded $1,000 in legal fees and $885.72 in disbursements to Attorney Bachrach, $500 in legal fees to Bachrach's co-counsel at the hearing, $500 to the court evaluator, and $500 to Ms. Wogelt's psychiatrist for services rendered. In an order entered on or about April 8, 1996, the court granted petitioner's motion to reargue and, upon reargument, adhered to its original decision.

Petitioner appealed, arguing that the lower court failed to comply with various requirements of Mental Hygiene Law article 81 and failed to justify its award of fees. Ms. Wogelt, ably represented by Mental Hygiene Legal Services on appeal, has joined in several of petitioner's appellate claims.

■■ By its express terms, article 81 of the Mental Hygiene Law has as its purpose the establishment of "a guardianship system which is appropriate to satisfy either personal or property management needs of an incapacitated person in a manner tailored to the individual needs of that person, which takes in account the personal wishes, preferences and desires of the person, and which affords the person the greatest amount of independence and self-determination and participation in all the decisions affecting such person's life" (Mental Hygiene Law § 81.01). Consistent with this purpose, the article provides that, upon commencement of a proceeding by a qualified party pursuant to Mental Hygiene Law § 81.06, the court must undertake a detailed analysis, on the record, of the physical, mental, and financial health of the person alleged to be incapacitated. Although the trial court acted with fairness and acuity in this case, it failed to meet several of the specific and significant statutory requirements in the conduct of its analysis. Consequently, we reverse, and remand this matter for a new hearing.

■ We note initially that the court evaluator in this matter failed properly to perform the duties set forth in Mental Hygiene Law § 81.09. The evaluator's role under article 81 is that of an independent investigator, empowered to assist the court in independently assessing the totality of circumstances

affecting the person alleged to be incapacitated (AIP), determining the AIP's personal capabilities, marshalling the AIP's resources, selecting and empowering an appropriate guardian, and assuring that the due process rights of the AIP are not violated. The evaluator's duties include, *inter alia*, meeting with the AIP (Mental Hygiene Law § 81.09 [c] [1]), explaining the nature and possible consequences of the proceeding and the AIP's right to counsel (Mental Hygiene Law § 81.09 [c] [2]), determining whether legal counsel should be appointed for the AIP (Mental Hygiene Law § 81.09 [c] [3]), interviewing the petitioner (Mental Hygiene Law § 81.09 [c] [4]), and issuing a written report and recommendations to address a lengthy list of specific questions and issues set out in the statute (Mental Hygiene Law § 81.09 [c] [5]). In the matter at bar, the evaluator's investigation and recommendations failed to perform adequately several of the most crucial of these duties, including the personal assessment of Ms. Wogelt's wishes, recommendation on the appointment of counsel, interview with petitioner, report of Ms. Wogelt's physical and financial condition, and analysis of Ms. Wogelt's appreciation of her own limitations. While we do not today hold that an inadequate evaluator's report, standing alone, is sufficient grounds for reversal of a disposition issued after a full and fair hearing, we note that the evaluator's investigatory duties are a crucial aspect of an expeditious article 81 proceeding, and should not be lightly forsaken.

A more critical error in this case was the court's failure to appoint counsel on behalf of Ms. Wogelt. Article 81 requires the court to hold a hearing (Mental Hygiene Law § 81.11 [a]), generally in the presence of the AIP, "so as to permit the court to obtain its own impression of the person's capacity" (Mental Hygiene Law § 81.11 [c]). In certain cases where the AIP is unrepresented by counsel at the hearing—including cases where the AIP wishes to contest the petition, or does not consent to movement to a nursing home or other residential facility (Mental Hygiene Law § 81.10 [c] [2], [3]), or where the court finds that the appointment of counsel "would be helpful to the resolution of the matter" (Mental Hygiene Law § 81.10 [c] [7])—appointment of counsel is mandatory. Even if the AIP refuses legal assistance, the court may appoint counsel if it believes that the AIP is incapable of making an informed decision on this issue (Mental Hygiene Law § 81.11 [e]; § 81.10 [d]). In the matter at bar, the court erred in failing to appoint counsel as soon as it became apparent that Ms. Wogelt

contested the appointment of Ms. Lichtenstein as her guardian and opposed a move to Monsey. The court further erred in failing to notify Ms. Wogelt on the record of the purpose and possible consequences of the proceeding, her right to be represented by counsel, and the fact that the court would appoint counsel if she so desired (Mental Hygiene Law § 81.11 [e]).

In our view, appointment of counsel was also warranted under Mental Hygiene Law § 81.10 (c) (7), in light of Ms. Wogelt's belief that Mr. Bachrach, petitioner's counsel, was acting as her attorney after the petition was filed. While we ascribe only the most honorable of intentions to Attorney Bachrach, the record plainly reflects continuing and conflicting interests arising from his representation of the petitioner and his actions on behalf of the AIP. At the very least, these circumstances necessitated an appointment of independent counsel for Ms. Wogelt.

■ The court further erred in failing to make specific findings on the record supporting its appointment of a guardian for property management. Such findings, mandated under article 81 in cases where an AIP does not consent to the appointment of a guardian, include a determination of incapacity (Mental Hygiene Law § 81.02 [a] [2]), a statement of the functional limitations of the AIP, the necessity of the appointment of a guardian to prevent harm, the specific powers of the guardian, the duration of the appointment, the type and amount of property of the AIP, the specific powers of the guardian which constitute the least restrictive form of necessary intervention, as well as other pertinent findings (Mental Hygiene Law § 81.15 [c], § 81.21). The requirement of such findings is not mere statutory surplusage; rather, these specifications are crucial to the detailed and fact-specific guardianships that article 81 was designed to produce (*see, Matter of Pasner*, 215 AD2d 763).

■ Lastly, the hearing court erred in failing to set forth the basis for its award of attorney's fees to petitioner's counsel (*see, Matter of Karp*, 145 AD2d 208 [listing factors for consideration in an award of attorney's fees]). Although the court may award reasonable compensation to the petitioner's attorney in cases where the petition is granted or where the court otherwise deems it appropriate (Mental Hygiene Law § 81.16 [f]), we are simply unable to evaluate the appropriateness of that award on the record now before us. Consequently, the award must be reversed and remanded for reconsideration.

Accordingly, the order and judgment (one paper) of the Supreme Court, Bronx County (Lottie Wilkins, J.), entered on

or about January 9, 1996, which denied petitioner's application for appointment as guardian for the person and property of Edda Wogelt, appointed a third person as guardian of Ms. Wogelt's property, and awarded attorney's fees, should be reversed, on the law, without costs, and the matter remanded for a new hearing.

WALLACH, RUBIN and WILLIAMS, JJ., concur.

Order and judgment (one paper), Supreme Court, Bronx County, entered on or about January 9, 1996, reversed, on the law, without costs, and the matter remanded for a new hearing.