Matter of Domenica P. (2018 NY Slip Op 02151)





Matter of Domenica P.


2018 NY Slip Op 02151


Decided on March 28, 2018


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on March 28, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

CHERYL E. CHAMBERS, J.P.
LEONARD B. AUSTIN
SHERI S. ROMAN
JOSEPH J. MALTESE
BETSY BARROS, JJ.


2014-12018
2015-03762
 (Index No. 8348/11)

[*1]In the Matter of Domenica P. (Anonymous). United Guardianship Services, respondent; Law Offices of Ira S. Newman, et al., appellants.


Law Offices of Ira S. Newman and Ira S. Newman, Great Neck, NY, appellants pro se.
Miller & Milone, P.C., Garden City, NY (Tammy Rose Lawlor of counsel), for respondent.



DECISION & ORDER
In a guardianship proceeding in which United Guardianship Services, the guardian of the person and property of Domenica P., an incapacitated person, in effect, petitioned pursuant to Mental Hygiene Law § 81.43 to recover certain property allegedly withheld from the incapacitated person and for an award of attorney's fees, the Law Offices of Ira S. Newman and Ira S. Newman appeal from (1) a decision of the Supreme Court, Queens County (Bernice D. Siegal, J.), entered October 16, 2014, and (2) an order and judgment (one paper) of the same court entered January 22, 2015, which granted the petition and is in favor of the petitioner and against them in the total sum of $23,737.50.
ORDERED that the appeal from the decision is dismissed, as no appeal lies from a decision (see Schicchi v J.A. Green Constr. Corp., 100 AD2d 509); and it is further,
ORDERED that the order and judgment is reversed, on the law, the petition is denied, and the proceeding is dismissed; and it is further,
ORDERED that one bill of costs is awarded to the appellants.
In 2011, the petitioner was appointed as the guardian of the property of Domenica P., an incapacitated person suffering from Alzheimer's disease, in a proceeding pursuant to Mental Hygiene Law article 81. Domenica P.'s daughter, Rosario R., was appointed as guardian of the person. At that time, Domenica P. lived in a house with her daughter in Ozone Park, Queens.
After a home care attendant reported an altercation in the home, the Department of Social Services requested that the petitioner file a motion to become guardian of the person of Domenica P. The petitioner made the motion and the Supreme Court, Queens County (Nahman, J.), held a hearing on the issue. After the hearing, the court concluded that the daughter committed [*2]verbal abuse and one act of physical abuse against Domenica P. Further, although the issues were only briefly addressed at the hearing, the court also found that the daughter failed to file necessary reports in connection with her role as guardian of the person, and that she failed to turn over unspecified assets of Domenica P. to the petitioner as the guardian of the property. Based on these findings, the court issued an order removing the daughter as the guardian of the person and appointed the petitioner as the guardian of the person (hereinafter the removal order). Thus, the petitioner became both the guardian of the person and the property of Domenica P.
After her removal, the daughter retained the Law offices of Ira S. Newman and Ira S. Newman (hereinafter together the appellants) to represent her in challenging the removal order. The daughter paid the appellants a retainer of $20,000 by check dated March 22, 2013, drawn on her personal account. The appellants inquired about the source of these funds and the daughter assured them that the money was from her own savings. Subsequently, the daughter tried to pay additional legal fees to the appellants with a check drawn on an account held jointly in her name and that of Domenica P., but the appellants refused to accept that check. Thereafter, the appellants ended their representation of the daughter, upon her direction and consent, with an unpaid balance due and owing.
At a conference held on March 24, 2014, the daughter admitted that the $20,000 she paid the appellants as a retainer fee actually originated from funds belonging to Domenica P. Upon learning this, the appellants informed the Supreme Court that they would research whether the $20,000 was subject to recoupment in the ongoing guardianship proceedings. In a letter to the court dated April 1, 2014, the appellants stated that they had found no precedent requiring "the recoupment" from them of the $20,000 retainer. The appellants explained that, when they accepted the fee, they did not know that the money actually belonged to Domenica P. They had not taken part in any fraud committed by the daughter, and they provided fair consideration for the $20,000 in the form of legal services.
Thereafter, the petitioner, in effect, commenced this turnover proceeding pursuant to Mental Hygiene Law § 81.43, seeking the return of the $20,000 from the appellants. The Supreme Court granted the petition without a hearing and entered a judgment in favor of the petitioner and against the appellants in the total sum of $23,737.50, which included an award of attorneys' fees in the amount of $3,737.50. We reverse, deny the petition, and dismiss the proceeding.
"Mental Hygiene Law § 81.43 provides a mechanism by which a guardian appointed in a Mental Hygiene Law article 81 proceeding may fulfill his or her duties of identifying and protecting the assets of an incapacitated person for that person's benefit" (Johnson v Buono, 141 AD3d 782, 782, citing Mental Hygiene Law §§ 81.20[6][ii], [iv]; 81.43[a]). "It is part of an overall statutory scheme that is remedial in nature and designed to assist persons in taking action through a representative that they could not otherwise take [care of] themselves because of their incapacity" (Johnson v Buono, 141 AD3d at 782, citing Mental Hygiene Law § 81.01).
More specifically, Mental Hygiene Law § 81.43(a) provides that "[t]o the extent that it is consistent with the authority otherwise granted by the court a guardian may commence a proceeding in the court which appointed the guardian to discover property withheld" from the incapacitated person. Mental Hygiene Law § 81.43(a) further provides, in pertinent part, that the petition shall contain knowledge "of any facts tending to show that any interest in . . . money . . . which should be delivered and paid to the guardian, is in the possession, under the control, or within the knowledge or information of respondent who withholds the same from the guardian."
However, under the circumstances present here, the petitioner failed to demonstrate that the $20,000 paid as a retainer constituted "property withheld" from Domenica P. by the appellants within the meaning of Mental Hygiene Law § 81.43. Further, contrary to the Supreme Court's determination, the petitioner failed to demonstrate that the appellants knew that the daughter had taken Domenica P.'s funds to pay the initial retainer fee or that they failed to take reasonable precautions against being paid with funds that had possibly been misappropriated from Domenica [*3]P.
This particular proceeding is substantially different from a Mental Hygiene Law § 81.43 proceeding brought directly against the incapacitated person's attorney-in-fact (see e.g. Matter of Garson, 17 AD3d 243), or directly against someone having a different type of fiduciary and confidential relationship with the incapacitated person (see Matter of Daniel B., 134 AD3d 1103, 1104; Matter of Frank A.L. v Vaccarelli, 117 AD3d 740, 741). This turnover proceeding was brought against the law firm retained by the daughter to challenge the Supreme Court's decision to remove her as guardian of the person of her incapacitated mother, with whom she had been living for some time. In the absence of any indicia that the appellants colluded with the daughter in converting her mother's funds, or had substantial knowledge that the money used for the retainer was derived from funds belonging to Domenica P., no judgment against them is warranted.
Contrary to the Supreme Court's determination, the inquiry by the appellants was sufficient. The appellants accepted a check from the daughter's individual checking account. After the appellants asked the daughter if this was her own money or if it belonged to Domenica P., she told them that the $20,000 came from her own savings. Under these circumstances, the appellants had no reasonable obligation to further investigate, or assess the truthfulness of, their prospective client. What is most revealing is that the appellant law firm rightfully rejected a subsequent check from the daughter drawn on an account held jointly in names of the daughter and Domenica P.
Significantly, Mental Hygiene Law 81.43(a) further provides that a turnover proceeding may be commenced when a "respondent refuses to disclose knowledge or information which such person may have concerning the same or which will aid the guardian in making discovery of such property." Here, the appellants were cooperative in disclosing the information that they had available to them.
While we are sensitive to the laudable concerns of our dissenting colleagues, we cannot agree that the circumstances presented here warrant a hearing or a finding that the appellants acted in an unreasonable or unprofessional manner as to discern a collusive scheme with the daughter.
Accordingly, the Supreme Court should have denied the petition and dismissed the proceeding. In light of our determination, we need not reach the appellants' remaining contention with respect to the award of an attorney's fee.
AUSTIN, ROMAN and MALTESE, JJ., concur.
BARROS, J., dissents, and votes to reverse the order and judgment (one paper), on the law, without costs or disbursements, and to remit the matter to the Supreme Court, Queens County, for an evidentiary hearing pursuant to Mental Hygiene Law § 81.43(b), and, thereafter, a new determination of the petition, with the following memorandum, with which CHAMBERS, J.P., concurs.
In 2011, the petitioner United Guardianship Services was appointed guardian of the property of Dominica P., an incapacitated person (hereinafter the IP). Rosario R., the IP's daughter, was deemed unsuitable to be appointed guardian of the property, and was appointed guardian of the person of the IP. In 2013, the Supreme Court, Queens County (Nahman, J.), ordered the removal of the daughter as the guardian of the person, and appointed the petitioner as guardian of the person (hereinafter the removal order) based upon a finding that the daughter had physically abused the IP.
The daughter then retained the Law Offices of Ira S. Newman and Ira S. Newman (hereinafter together the appellants) to move for leave to reargue the removal order. On March 22, 2013, the daughter gave the appellants a check in the amount of $20,000 as a retainer. Over a year later, at a court conference held on March 24, 2014, the daughter revealed that the money she used to pay the retainer belonged to the IP.
Thereafter, the petitioner commenced this turnover proceeding pursuant to Mental Hygiene Law § 81.43, seeking the return of the IP's money from the appellants. The appellants contended that they were entitled to keep the money, since they did not have notice that the retainer was paid with the IP's money. Without holding an evidentiary hearing, as required by Mental Hygiene Law § 81.43, the Supreme Court granted the petition and entered a judgment in favor of the petitioner and against the appellants in the total sum of $23,737.50, which included an award of attorneys' fees in the amount of $3,737.50.
Mental Hygiene Law § 81.43 "provides a mechanism by which a guardian . . . may fulfill his or her duties of identifying and protecting the assets of an incapacitated person for that person's benefit" (Matter of Johnson v Buono, 141 AD3d 782, 782). "It is part of an overall statutory scheme that is remedial in nature and designed to assist persons in taking action through a representative that they could not otherwise take themselves because of their incapacity" (id.) Thus, a guardian may, by way of petition, "commence a proceeding in the court which appointed the guardian to discover property withheld" (Mental Hygiene Law § 81.43[a]). The petition shall contain "knowledge, or information and belief of any facts tending to show that . . . money . . . , which should be delivered and paid to the guardian, is in the possession, under the control, or within the knowledge or information of [a] respondent who withholds the same from the guardian" (id.) Here, the petition sufficiently alleged that the appellants came into possession of the IP's money when the daughter gave them a check in the amount of $20,000, and that, given the circumstances of the daughter's known financial problems and the court proceedings which established that the daughter had misappropriated the IP's money and assets, the appellants knew or should have known that money given to them by the daughter belonged to the IP.
Mental Hygiene Law § 81.43(b) provides that "[a]ny claim of title to or right to the possession of any property of the incapacitated person must be made by verified answer in writing," and "if such answer is interposed, the issues raised thereby shall be tried according to the usual practice of the court as a litigated issue." Here, although not submitting an answer to the petition, the appellants claimed title to and right to possession of the subject money. Even accepting the appellants' documents as an answer, the Supreme Court should have conducted an evidentiary hearing pursuant to Mental Hygiene Law § 81.43(b) prior to making any determination on the merits of the petition (see Matter of Johnson v Buono, 141 AD3d 782; Matter of Daniel B., 134 AD3d 1103; Matter of Frank A.L. v Vaccarelli, 117 AD3d 740).
Contrary to the majority's determination, the papers presented to the Supreme Court demonstrate the existence of multiple issues of fact, including whether, at any time prior to the exhaustion of the $20,000 retainer, the appellants knew or should have known that the funds belonged to the IP. Upon being retained, the appellants knew that the daughter had not been appointed as guardian over the property of the IP, even though she was the IP's daughter, and, therefore, the court had determined that she was unsuitable (see Matter of Joshua H., 62 AD3d 795; Matter of Audrey D., 48 AD3d 806, 807 ["While appointment of a family member is preferable, it is well within the Supreme Court's discretion to appoint an outsider upon a determination that the available family member is, in some way, not suitable"]). The appellants were aware that they were being retained because the daughter sought to reargue the Supreme Court's determination to remove her as the guardian over the IP's person based upon physical abuse of the IP.
Within a week of accepting the retainer from the daughter, the appellants received the transcript of the removal proceedings. The transcript revealed that the daughter was unemployed, no longer collected unemployment benefits, and had applied for food stamps. At the hearing, the daughter admitted that she had transferred the IP's assets to herself using a power of attorney, and that she had set up a joint bank account into which the IP's social security payments were directly deposited. Thus, at the very least, early in the representation, the appellants had notice that their client had no known source of income, and that their client had improperly taken the IP's money in violation of an order that appointed the petitioner the guardian over the IP's property and required her to turn the IP's money over to petitioner.
The record contains an email dated July 1, 2013, in which the petitioner's counsel notified the appellants that there were improper withdrawals from an account belonging to the IP in the amount of $26,440.47 during the period from April to May 2013, that the daughter still had not accounted for the IP's social security income, that the daughter may have cashed out the IP's life insurance policy, and that the daughter improperly gifted herself in 2008 the sum of $215,000 from the IP's trust fund. Significantly, the email advised the appellants that an IRA account that the daughter had previously represented as her own was likely opened with funds belonging to the IP.
The Supreme Court also noted that the appellants should have been alerted by the court evaluator's report, which noted that the daughter had financial difficulties, lost her job, and had improperly converted the proceeds of sale of the IP's home into an annuity in her own name. In guardianship proceedings, the court evaluator is empowered to assist the court in independently assessing the totality of circumstances affecting the IP, including reporting on how the IP's finances are being managed (see Mental Hygiene Law § 81.09[c][5][vi], [ix]; see also Matter of Wogelt, 223 AD2d 309).
The majority's reliance on the appellants' submissions to justify dismissal of the proceeding without a hearing is misplaced. Contrary to the majority's determination, the attorneys' affirmations raise more questions than they resolve. Initially, as parties to the proceeding, the appellants were not entitled to rely upon the attorneys' unnotarized affirmations, and the facts alleged in such affirmations are not admissible evidence (see CPLR 2106; Law Off. of Neal D. Frishberg v Toman, 105 AD3d 712).
In any event, Brad A. Schlossberg, an associate of the Law Office of Ira S. Newman, affirmed that, after reviewing the trial transcripts which were received by his law firm on March 28, 2013, he asked the daughter whether the retainer was paid with the IP's funds, and the daughter told him that she paid the retainer with her own savings and funds from an IRA account. According to Schlossberg, in June 2013, only two months after receiving the retainer check, the appellants learned that the daughter was living off of funds from an account in which the IP was named as the beneficiary. Moreover, counsel affirmed that, by June 2013, the appellants had exhausted the entire $20,000 retainer, and were continuing to bill the daughter for legal services.
Although only hired to interpose a motion for leave to reargue, the appellants not only exhausted the $20,000 retainer, but claimed that the daughter owed them an additional $40,000 in legal fees. The appellants' submissions fail to (1) describe what legal services were performed from mid-March 2013 to June 2013 to justify the exhaustion of the $20,000 retainer, (2) set forth when funds were drawn from the retainer account (see generally Rules of Professional Conduct [22 NYCRR 1200.0], rule 1.5 [prohibiting the use of nonrefundable retainer fees]), and (3) describe what information the appellants learned from mid-March 2013 (when the appellants accepted the retainer) until March 24, 2014 (when the daughter revealed that the money she used to pay the retainer belonged to the IP), pertaining to the issue of whether they knew or should have known that the retainer fee was paid with the IP's money.
The majority's determination to deny the petition and dismiss the proceeding and allow the appellants to keep the IP's money without a hearing undermines the purpose of article 81 to protect the due process rights of incapacitated persons (see Mental Hygiene Law § 81.01). Given that the IP's money was, in fact, used to pay the appellants' retainer, and that the papers raise multiple issues of fact, including whether the appellants knew or should have known that fact before they exhausted the entire retainer, I vote to reverse the order and judgment, and remit the matter to the Supreme Court, Queens County, for an evidentiary hearing pursuant to Mental Hygiene Law § 81.43(b) and, thereafter, a new determination of the petition.
ENTER:
Aprilanne Agostino
Clerk of the Court